**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>　　**Plaintiff, Counter-Defendant,**<br><br>**v.**<br><br>**DENKA PERFORMANC ELASTOMER, LLC.,**<br><br>　　**Defendant and Counter-Plaintiff,**<br><br>　**and**<br><br>**DUPONT SPECIALTY PRODUCTS USA, LLC,**<br><br>　　**Defendant.** | **Case No. 23-cv-00735**<br><br>**Hon. Carl J. Barbier**<br><br>**Mag. Michael North** |

**UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS DENKA PERFORMANCE ELASTOMER, LLC'S
COUNTERCLAIMS AND FIRST SIX AFFIRMATIVE DEFENSES FOR LACK OF
SUBJECT MATTER JURISDICTION**

Respectfully submitted,

U.S. Department of Justice
Environment and Natural Resources Div.

Dated:   May 8, 2023

　　　　　　/s/ Heather E. Gange　　　　
HEATHER E. GANGE, D.C. Bar 452615
Environmental Defense Section
STEVEN D. SHERMER, D.C. Bar 486394
DANIEL S. SMITH
DAVIS H. FORSYTHE
HANNAH L. FRAZIER
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-4206
Heather.Gange@usdoj.gov

0

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARDS ...................................................................................................... 2

BACKGROUND ................................................................................................................ 4

I.      EPA RISK ASSESSMENT TOOLS  ...................................................................... 4

        A.      Integrated Risk Information ("IRIS") ........................................................ 5

        B.      National Air Toxics Assessments ("NATA") ............................................ 6

II.     THE INFORMATION QUALITY ACT ................................................................ 6

III.    THE 2010 ASSESSMENT AND DENIALS .......................................................... 7

IV.     PROPOSED CLEAN AIR ACT RULE ................................................................. 8

V.      THIRD PARTY ACTIONS .................................................................................... 8

VI.     DENKA'S WITHDRAWN CASE AGAINST EPA ............................................... 9

VII.    EPA INVESTIGATIONS AND LITIGATION ..................................................... 10

ARGUMENT ..................................................................................................................... 11

I.      THE GOVERNMENT HAS SOVEREIGN IMMUNITY TO DENKA'S
        APA CLAIMS  ........................................................................................................ 11

        A.      Denka's First Six Affirmative Defenses Should Be Re-Designated
                As APA Counterclaims ............................................................................. 13

        B.      The Declaratory Judgment Act, 28 U.S.C. § 1331, and the
                Information Quality Act Do Not Contain Sovereign Immunity
                Waivers .................................................................................................... 15

        C.      Denka's APA Claims Do Not Fall within the APA's Waivers of
                Sovereign Immunity ................................................................................. 16

                1.      The 2010 Assessment and Denials Are Not Final Agency
                        Actions for Purposes of Judicial Review under the APA ............ 16

a.      IRIS Assessments Do Not Have Any Legal Effect ......................17

b.      Third-Party Actions Have No Effect on Finality
under the APA.................................................................................19

c.      Federal Investigations Do Not Make Actions Final
under the APA.................................................................................20

d.      This Clean Air Act Action Also Did Not Make the
2010 Assessment and Denials Final for APA
Review Purposes ............................................................................21

2.      APA Section 701(a)(2) Precludes Judicial Review of the
Denials .........................................................................................................22

II.     ALL APA CHALLENGES TO THE 2010 ASSESSMENT ARE NOW
TIME BARRED, IF ONE ASSUMES THAT THE 2010 ASSESSMENT
IS A FINAL AGENCY ACTION UNDER THE APA ........................................24

III.    DENKA'S FIRST SIX AFFIRMATIVE DEFENSES SHOULD BE
STRICKEN UNDER FED. R. CIV. P. 12(f) IF THEY ARE NOT
REDESIGNATED AS COUNTERCLAIMS ...................................................25

CONCLUSION...........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*,
 611 F.2d 997 (5th Cir. 1980) ..........................................................................................15

*Ades v. United States*,
 No. 22-100442, 2022 WL 1198206 ................................................................................24

*Alabama ex rel. Baxley v. Woody*,
 473 F.2d 10 (5th Cir. 1973) ..............................................................................................3

*Alabama-Coushatta Tribe of Tex. v. United States*,
 757 F.3d 484 (5th Cir. 2014) ..............................................................................11, 12, 16

*American Bioscience, Inc. v. Thompson*,
 269 F.3d 1077 (D.C. Cir. 2001) ................................................................................14, 15

*Americans for Safe Access v. U.S. Dep't of Health & Hum. Servs.*,
 No. C 07-01049 WHA, 2007 WL 4168511 (N.D. Cal. Nove 20, 2007)..........................23

*American Stewards of Liberty v. Dep't of Interior*,
 960 F.3d 223 (5th Cir. 2020) ...........................................................................................24

*Anderson v. United States*,
 229 F.2d 675 (5th Cir. 1956) ...........................................................................................15

*Anchor Hocking Corp. v. Jacksonville Elec. Auth.*,
 419 F. Supp. 992 (M.D. Fla. 1976) ...................................................................................4

*Arbaugh v. Y&H Corp.*,
 546 U.S. 500 (2006) ...........................................................................................................3

*Balistrieri v. United States*,
 303 F.2d 617 (7th Cir. 1962) ...........................................................................................15

*Barrera– Montenegro v. United States*,
 74 F.3d 657 (5th Cir.1996) ................................................................................................3

*Bender v. Williamsport Area Sch. Dist.*,
 475 U.S. 534 (1986) ......................................................................................................2, 4

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................................16, 17, 18

*Butler v. Denka Performance Elastomer, LLC*,
  No. 18-cv-6685, 2020 WL 2747276 (E.D. La. May 27, 2020) ..............................6, 9

*Chem. Manuf. Assoc. v. EPA*,
  28 F.3d 1259 (D.C. Cir. 1994) .....................................................................................5, 18

*Cnty. of L.A. v. Shalala*,
  192 F.3d 1005 (D.C. Cir. 1999) ......................................................................................14

*Dalton v. Specter*,
  511 U.S. 462 (1994)) .....................................................................................................20

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
  241 F.3d 420 (5th Cir. 2001) ........................................................................................3

*Dep't of Energy v. Ohio*,
  503 U.S. 607 (1992) ......................................................................................................12

*Dep't of the Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999) ......................................................................................................12

*Dine Citizens Against Ruining Our Env't v. Haaland*,
  59 F.4th 1016 (10th Cir. 2023) ......................................................................................6

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*,
  112 F.3d 1283 (5th Cir. 1997) ......................................................................................24

*El Bay v. Dominguez*,
  No. 21-10081, 2022 WL 17975467 (5th Cir. Dec. 28, 2022) ..................................4

*Ellis v. Evonik Corp.*,
  604 F. Supp. 3d 356 (E.D. La. May 27, 2022) ..............................................................6

*FAA v. Cooper*,
  566 U.S. 284 (2012) ......................................................................................................11

*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994) ..............................................................................................3, 11, 12

*Fam. Farm All. v. Salazar*,
  749 F. Supp. 2d 1083 (E.D. Cal. 2010) .........................................................................23

iv

*Fernandez–Montes v. Allied Pilots Ass'n,*
    987 F.2d 278 (5th Cir. 1993) ........................................................................................4

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA,*
    313 F.2d 852 (4th Cir. 2002) ..................................................................................18, 20

*Fort Bend Cty. v. U.S. Army Corps of Eng'rs,*
    59 F.4th 180 (5th Cir. 2023) ......................................................................11, 12, 16, 22

*Fortado v. Evonik Corp.,*
    No. 22-1518, 2022 WL 4448230 (E.D. La. Sept. 23, 2022) .......................................6

*FTC v. Standard Oil Co.,*
    449 U.S. 232 (1980) ...........................................................................................18, 20, 21

*Germain v. U.S. Bank Nat'l Assoc.,*
    920 F.3d 269 (5th Cir. 2019) ....................................................................................13

*Grupo Dataflux v. Atlas Global Grp., L.P.,*
    541 U.S. 567 (2004) ..................................................................................................2, 4

*Gandy Nursery, Inc. v. United States,*
    318 F.3d 631 (5th Cir. 2003) ....................................................................................24

*Harkonen v. U.S. Dep't of Just.,*
    No. C 12–629, 2012 WL 6019571 (N.D. Cal. Dec. 3, 2012) ...............................16, 23

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ..................................................................................................20

*Hindes v. Fed. Deposit Ins. Co.,*
    137 F.3d 148 (3d Cir. 1998) ......................................................................................20

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,*
    143 F.3d 1006 (5th Cir. 1998) ...............................................................................2, 19

*Howery v. Allstate Ins. Co.,*
    243 F.3d 912 (5th Cir. 2001) ......................................................................................3

*In re Operation of the Mo. River Sys. Litig.,*
    363 F. Supp. 2d 1145 (D. Minn. 2004) .....................................................................23

*Jackson v. Boone,*
    No. 20-3393, 2022 WL 18276710 (E.D. La. Dec. 15, 2022) ......................................3

v

*Kaiser Aluminum and Chem. Sales, Inc. v. Avondale Shipyards*,
   677 F.2d 1045 (5th Cir. 1982) ................................................................4, 25

*Koehler v. United States*,
   153 F.3d 263 (5th Cir. 1998) .......................................................................11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ...............................................................................3, 12

*Lane v. Pena*,
   518 U.S. 187 (1992) ...................................................................................12

*LeBouef v. Island Operating* Co.,
   342 Fed. Appx. 983 (5th Cir. 2009) ...........................................................24

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)) ..................................................................................17

*Luminant Generation Co. LLC v. EPA*,
   714 F.3d at 841 (5th Cir. 2013) .................................................................14

*Lunsford v. United States*,
   570 F.2d 221 (8th Cir. 1977) ........................................................................4

*Manchanda v. Lewis*,
   No. 21-1088, 2021 WL 5986877 (2d Cir. Dec. 17, 2021) ...........................20

*Marbury v. Madison*,
   1 Cranch 137 (5 U.S.) (1803) ......................................................................3

*Miss. Com'n on Env'tl Quality v. EPA*,
   709 F.3d 138 (D.C. Cir. 2015) ...................................................................16

*Montez v. Dep't of the Navy*,
   392 F.3d 147 (5th Cir. 2004) ........................................................................3

*Muslim Advocates v. U.S. Dep't of Just.*,
   No. 18-2137, 2019 WL 3254230 (N.D. Cal. July 19, 2019) ........................23

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) .....................................................................................22

*Nowak v. Ironworkers Loc. 6 Pension Fund*,
   81 F.3d 1182 (2d Cir. 1996) ...................................................................2, 19

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981)................................................................................3

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001)................................................................................4

*Reed v. Columbia St. Mary's Hosp.*,
  915 F.3d 473 (7th Cir. 2019)............................................................................13

*Reiter v. Cooper*,
  507 U.S. 258, 265 (1993)....................................................................................15

*Robinson v. TCI/US W. Commc'ns Inc.*,
  117 F.3d 900 (5th Cir. 1997)................................................................................3

*Ruhrgas AG v. Marathon Oil Co.*,
  52 U.S. 574 (1999) ..............................................................................................3

*Salt Inst. v. Leavitt*,
  440 F.3d 156 (4th Cir. 2006)........................................................................16, 20

*Salt Inst. v. Thompson*,
  345 F. Supp. 2d 589 (E.D. Va. 2004)......................................................7, 19, 23

*United States v. Schwarzbaum*,
  324 F.4th 1355 (11th Cir. 2022) .........................................................................14

*SEC v. Chenery Corp. (II)*,
  332 U.S. 194 (1947)............................................................................................14

*Sisseton–Wahpeton Sioux Tribe v. United States*,
  895 F.2d 588 (9th Cir. 1990)..............................................................................24

*Steenholdt v. FAA*,
  314 F.3d 633 (D.C. Cir. 2003) ...........................................................................22

*Styrene Info. and Rech.. Ctr., Inc. v. Sebelius*,
  944 F. Supp. 2d 71 (D.D.C. 2013) .....................................................................23

*Taylor Energy Co. LLC v. United States*,
  No. 20-1720, 2021 WL 1876845 (E.D. La. May 10, 2021)................................12

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) ..............................................................................17

*Tenneco, Inc. v. Saxony Bar & Tube, Inc.*,
    776 F.2d 1375 (7th Cir. 1985) ................................................................................15

*U.S. Army Corps. of Eng. v. Hawkes Co.*,
    578 U.S. 590 (2016) .............................................................................................17

*U.S. Dep't of Just. v. Fed. Lab. Relations Auth.*,
    727 F.2d 481 (5th Cir.1984)..................................................................................17

*United States v. Mitchell*,
    445 U.S. 535 (1980) .............................................................................................12

*United States v. Mitchell*,
    463 U.S. 206 (1983) .......................................................................................11, 12

*United States v. Nordic Vill., Inc.*
    503 U.S. 30 (1992) ...............................................................................................11

*Veldhoen v. U.S. Coast Guard*,
    35 F.3d 222 (5th Cir. 1994)......................................................................17, 20, 21

*Voluntary Purchasing Groups, Inc. v. Reilly*,
    889 F.2d 1380 (5th Cir. 1989)...............................................................................15

*Wells v. Ali*,
    304 Fed. App'x 292 (5th Cir. 2008) ........................................................................4

*Willner v. Dimon*,
    849 F.3d 93 (4th Cir. 2017)...................................................................................14

*Wright v. Southland Corp.*,
    187 F.3d 1287 (11th Cir. 1999).............................................................................13

**STATUTES**

5 U.S.C. § 551 ..............................................................................................................22

5 U.S.C. § 701 .......................................................................................................12, 22

5 U.S.C. § 702 .........................................................................................2, 12, 16, 19

5 U.S.C. § 704 ...............................................................................................2, 12, 19

28 U.S.C. § 1331 ......................................................................................1, 12, 15

28 U.S.C. § 2201 .................................................................................................15

28 U.S.C. § 2401 ...............................................................................................2, 24

42 U.S.C. § 7603 .............................................................................................10, 23

42 U.S.C. § 7607 ..................................................................................................8

44 U.S.C. § 3516 note (Pub. L. No. 106-554, § 1(a)(3)) .........................................10

**FEDERAL RULES OF CIVIL PROCEDURES**

Fed. R. Civ. P. 8 .........................................................................................11, 13, 25

Fed. R. Civ. P. 12 ...........................................................................................1-3, 5, 25

Fed. R. Civ. P. 13 ..........................................................................................11, 14

**FEDERAL REGISTER**

58 Fed. Reg. 11490 (Feb. 25, 1993) ...................................................................5

67 Fed. Reg. 8452 (Feb. 22, 2002) ...........................................................7, 17, 19, 23

88 Fed. Reg. 25080 (Apr. 25, 2023) ..................................................................8

**OTHER AUTHORITIES**

2A Moore's Fed. Practice, Para. 12.21 (2d ed.)....................................................4

Wright & Miller, Fed. Prac. & Proc. Civ. § 1381 (1969) ......................................4

Wright & Miller, Affirmative Defenses—Defenses Not Mentioned in Rule 8(c),
5 Fed. Prac. & Proc. Civ. § 1271 (3d ed.) ...................................................13

ix

**INTRODUCTION**

In January, Defendant Denka Performance Elastomer, LLC ("Denka") filed a suit in this Court asserting four Administrative Procedure Act ("APA") claims against the United States Environmental Protection Agency ("EPA") challenging a 2010 EPA scientific report ("2010 Assessment") and EPA's subsequent determinations that the report did not warrant "correction" under the Information Quality Act ("Denials").    *Denka Performance Elastomer, LLC v. EPA*, Case No. 23-147 (E.D. La.) (filed Jan. 11, 2023).    When the United States moved to dismiss Denka's complaint for lack of subject matter jurisdiction, the company voluntarily dismissed that suit and attempted to refashion the same claims as six counterclaims and as its first six "affirmative defenses" in this Clean Air Act ("CAA") Section 303 imminent and substantial endangerment suit, which the United States filed against Denka in February.    *Compare* ECF 22, at 17-19 (first six affirmative defenses) and 55-65 (counterclaims) *with Denka Performance Elastomer, LLC v. EPA*, Case No. 23-147 (E.D. La.), ECF 1 (Complaint), at 34-35, and ECF 30 (notice of voluntary withdrawal), ¶ 5.    These six "affirmative defenses" are in fact permissive counterclaims against EPA under Fed. R. Civ. P. 13(b)-(d) and should be redesignated as such under Fed. R. Civ. P. 8(c)(2).    Consequently, this motion refers to the mis-designated affirmative defenses and Denka's counterclaims collectively as Denka's "APA Claims."

This Court should dismiss Denka's APA Claims under Fed. R. Civ. P. 12(b)(1) for the same reasons it lacked subject matter jurisdiction over Denka's now-abandoned complaint against EPA.    *See* Mot. to Dismiss, *Denka Performance Elastomer*, Case No. 23-147, ECF 27 (March 20, 2023).    First, there is no waiver of the government's sovereign immunity in 28 U.S.C. § 1331, the Declaratory Judgment Act, or the Information Quality Act (*see infra,* at 15-

1

16).    Second, there is no applicable sovereign immunity waiver in Sections 702 and 704 of the APA, 5 U.S.C. §§ 702, 704, because the 2010 Assessment and Denials are not final agency actions within the meaning of that statute (*see infra,* at 16-22 & n.4).    Third, even if the Court were to find (or assume) that the Denials are final agency action for purposes of the APA, the review of such actions nonetheless is excluded from the APA waiver of sovereign immunity by Section 701(a)(2), 5 U.S.C. § 701(a)(2) (*see infra,* at 22-23 & n.5).    Fourth, even if the Court were to find (or assume) that the 2010 Assessment is a final agency action for purposes of the APA, there is no applicable sovereign immunity waiver because the six-year statute of limitations in 28 U.S.C. § 2401(a) would have expired in 2016 (*see infra,* at 24-25).

To be clear, Denka *is* free to assert that EPA based this CAA imminent and substantial endangerment case on inaccurate scientific information and explain why it considers that information to be inaccurate, whether or not that information is contained in the 2010 Assessment and related materials.    That does not make the 2010 Assessment and Denials *themselves* final or reviewable under the APA, however.    Moreover, a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is not a judgment on the merits, and it does not have a *res judicata* effect.    *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998) (citing *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996)).    Therefore, dismissing Denka's APA Claims will not impair Denka's ability to defend itself.

## LEGAL STANDARDS

The federal courts must satisfy themselves, as a threshold issue, that they have jurisdiction over the matters before them.    *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S.

2

567, 593 (2004) (citing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986));

*F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).   This requirement is based on the principle that

"[f]ederal courts are courts of limited jurisdiction," possessing "only that power authorized by

Constitution and statute."   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *Bender*, 475 U.S. at 541 (citing *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-80

(1803)); *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583-84 (1999).   Courts "must

presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal

jurisdiction rests on the party seeking the federal forum."   *Howery v. Allstate Ins. Co.*, 243 F.3d

912, 916 (5th Cir. 2001); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

      Courts must dismiss claims whenever they determine that they lack subject matter

jurisdiction.   Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp*., 546 U.S. 500, 514 (2006).

Parties may challenge the court's subject matter jurisdiction through a motion under Federal

Rule of Civil Procedure 12(b)(1), asserting either a "factual attack" or a "facial attack."   This

motion presents a factual attack.   In ruling on such a motion, courts may evaluate information

and materials outside the Complaint, including undisputed facts and the court's resolution of

disputed facts, without converting the motion into one for summary judgment.   *Den Norske

Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera-

Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)); *Robinson v. TCI/US W.

Commc'ns Inc*., 117 F.3d 900, 904 (5th Cir. 1997); *Paterson v. Weinberger*, 644 F.2d 521, 523

(5th Cir. 1981); *State of Alabama ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973).   For

factual attacks, no presumption of truthfulness attaches to the plaintiff's allegations.   *Montez v.

Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *Jackson v. Boone*, No. 20-3393, 2022 WL

18276710 *5 (E.D. La. Dec. 15, 2022).   Legal conclusions, subjective characterizations, and conclusory statements also should be disregarded.   *See Wells v. Ali*, 304 Fed. App'x 292, 293 (5th Cir. 2008); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *El Bay v. Dominguez*, No. 21-10081, 2022 WL 17975467 *1 (5th Cir. Dec. 28, 2022).

Courts also may strike insufficient defenses or "redundant, immaterial, impertinent, or scandalous matter" under Fed. R. Civ. P. 12(f).   "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law."   *Kaiser Aluminum and Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1057-58 (5th Cir. 1982) (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976), *Lunsford v. United States*, 570 F.2d 221, 228 (8th Cir. 1977), 2A Moore's Fed. Practice, Para. 12.21, at 2437 (2d ed. 1948), and Wright & Miller, Fed. Prac. & Proc. Civ. § 1381, at 799-800 (1969)).

## <u>BACKGROUND</u>

## I.     **EPA RISK ASSESSMENT TOOLS**

EPA's Office of Research and Development assesses the potential health hazards posed by numerous substances, and makes that information, and the means for performing future site- or situation-specific assessments, publicly available in the form of more than 80 different scientific models, 10 analytic tools, and more than 85 databases.   *See, e.g.,* Ex. A, Declaration of Kris Thayer, at Att. 1.   These tools, which are not guidance documents, rules, or regulations, can be used for many purposes including the development of federal or state rules and regulations, urban and regional planning, public health initiatives, and information that may (or may not) be used as evidence in state or federal site- or situation-specific enforcement actions.

4

A.      **Integrated Risk Information System ("IRIS")**

One of those 85 databases, the IRIS database, was first developed in 1986, and has been publicly searchable since 1988.   58 Fed. Reg. 11,490 (Feb. 25, 1993).   The IRIS database comprises hundreds of scientific reports developed by EPA's Center for Public Health and Environmental Assessment ("Center") that reflect EPA's assessment of the dose response information and human health hazard posed by oral and inhalation exposure to individual chemicals, groups of chemicals and complex mixtures.   Ex. A, at Att. 2.

IRIS assessments and the scientific information in them do not themselves establish any enforceable standards or limits, and do not create or trigger any legal requirements.   *See Chem. Manuf. Assoc. v. EPA*, 28 F.3d 1259, 1263 (D.C. Cir. 1994).   Instead, they are a publicly-accessible source of information for numerous EPA programs, other federal, state, local and international health agencies, organizations and individuals that "serv[es as a] guide[] in evaluating potential health hazards and selecting a response to alleviate a potential risk to human health."   53 Fed. Reg. 20162 at 20163; *see* Ex. A, at Att. 2.

Among other things, IRIS assessments may be used as scientific support for the development of area- and site-specific health risk assessments, which in turn may (or may not) inform federal risk management decisions addressing those specific factual situations.   Such risk management decisions in turn may (or may not) result in a formal Agency rulemaking or litigation.   *When finalized*, such rules can be subject to challenge in the U.S. District Courts or the U.S. Circuit Courts of Appeal (depending on—among other things—the applicable statutory judicial review provision), based on the agency's reliance on information from IRIS assessments. *See Chem. Manuf. Assoc.*, 28 F.3d at 1262 (addressing procedural and substantive objections to

EPA's use of IRIS assessment information in final EPA rule).    Parties subject to federal litigation—as Denka is here—likewise may raise defenses to the enforcing agency's reliance on scientific information in an IRIS assessment in such cases.

### B.    National Air Toxics Assessments ("NATA")

The NATAs are screening tools issued to help state, local and tribal air agencies identify which pollutants, emission sources and places they may wish to study further to better understand possible exposure and risks to public health from emissions of air toxics.    *See id.*; *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1047 (10th Cir. 2023); *see also Butler v. Denka Performance Elastomer, LLC*, No. 18-cv-6685, 2020 WL 2747276 **10-11 (E.D. La. May 27, 2020), *aff'd on other grounds*, 16 F.4th 427 (5th Cir. 2021); *Ellis v. Evonik Corp.*, 604 F.Supp.3d 356, 369 (E.D. La. May 27, 2022); *Fortado v. Evonik Corp*, No. 22-1518, 2022 WL 4448230 *2 (E.D. La. Sept. 23, 2022).    They were developed using information from IRIS assessments of hundreds of chemicals, weather data, and EPA's National Emissions Inventory.[1]    *See* Ex. B, at Att. 1, p. 4/9 ("AirToxScreen's four steps").

## II.    THE INFORMATION QUALITY ACT

Section 515(a) of the Treasury and General Government Appropriations Act for Fiscal Year 2001 is commonly referred to as the Information Quality Act ("IQA").    Pub. L. No. 106– 554, § 1(a)(3) (Title V, § 515) (Dec. 21, 2000) (publ. at 44 U.S.C. § 3516 note).    The IQA directs the Office of Management and Budget ("OMB") to issue guidelines that provide "policy and procedural guidance to Federal agencies for ensuring and maximizing the quality,

---

[1]  The NATAs have been superseded by the Air Toxics Screening Assessment, which is updated annually.    Ex. B, Declaration of Kelly Rimer, at Att. 1.

objectivity, utility, and integrity of information . . . disseminated by Federal agencies," including administrative mechanisms to seek correction of information that does not comply with OMB's guidelines.   *See id.*; *Salt Inst. v. Thompson*, 345 F.Supp.2d 589, 593 (E.D. Va. 2004).

Pertinent to this case, the resulting OMB guidelines require agencies to "specify appropriate time periods for agency decisions on whether and how to correct information" and "establish an administrative appeal process to review the agency's initial decision."   Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility, and Integrity of Information Disseminated by Federal Agencies; Republication, 67 Fed. Reg. 8452, 8459 (Feb. 22, 2002). OMB further specified that "Agencies, in making their determination of whether or not to correct information, may reject claims made in bad faith or without justification, and are required to undertake only the degree of correction that they conclude is appropriate for the nature and timeliness of the information involved."   *Id.* at 8458.

III.    **THE 2010 ASSESSMENT AND DENIALS**

In 2010, EPA added an assessment of the human health hazard posed by chloroprene exposure to the IRIS database.    ECF 22, at 4, 12, ¶¶ 2, 41.    In June 2017, Denka made an administrative request that EPA correct the 2010 Assessment under EPA's guidelines for implementing the Information Quality Act.    *Id.* at 17.    EPA denied that request in January 2018.    *Id.*    Denka submitted and then withdrew a request for reconsideration of that denial.

Denka submitted a second request for correction in July 2021, and EPA denied it in March 2022.    *Id.* at 18.    Denka submitted a request for reconsideration of the second denial, and EPA denied it in October 2022.    *Id.*

IV.     **PROPOSED CLEAN AIR ACT RULE**

On April 25, 2023, EPA published a proposed CAA rule of nationwide scope that, if

finalized, would regulate emissions of many different air pollutants from many different

categories of sources, based in part on information from the 2010 Assessment.[2]   *See* "New

Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and

National Emission Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical

Manufacturing Industry and Group I & II Polymers and Resins Industry," 88 Fed. Reg. 25080,

25084 (Apr. 25, 2023).   Members of the public and the regulated community, including Denka,

may participate in the rule's development by submitting comments and participating in public

hearings.   *See* 88 Fed. Reg. at 25080-81; 42 U.S.C. § 7607(d)(1)(C), (h).   EPA is required to

finalize this rule by March 29, 2024.   *See Env't Integrity Proj. v. Regan*, No. 20-cv-3119

(D.D.C.), ECF 39 (Consent Decree entered Aug. 24, 2022).

V.     **THIRD-PARTY ACTIONS**

As early as 2017, private individuals filed tort suits against Denka that were removed to

the United States District Court for the Eastern District of Louisiana, based on allegations of

harm from chloroprene emissions from the Denka Facility.   *Id.* at 50, ¶ 66; *see Denka*

*Performance Elastomers*, No. 23-cv-147, ECF 3.   The plaintiffs did not allege that the 2010

Assessment established a standard or emission limitation, though some attempted to rely on the

---

[2]   Due to the rule's subject matter, exclusive jurisdiction over *any* challenges will lie in the
United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").   42 U.S.C.
§ 7607(b)(1) (review not available in this Court).   No substantive or procedural challenge will
be ripe until the rule is finalized, *id.,* and the D.C. Circuit's review will be based solely on the
administrative record specified in Section 7607(d)(7)(A) and limited to "objections raised with
reasonable specificity during the period for public comment."   *Id.* § 7607(d)(7)(A), (e).

risk levels identified in the NATAs.    In one suit, the court held that the NATA does not

establish a standard of care because it is "less than a regulation" and EPA "disclaims its

regulatory or enforcement value."    *Butler v. Denka Performance Elastomer, LLC*, 2020 WL

2747276 **10-11 & n.11, *aff'd on other grounds*, 16 F.4th 427 (5th Cir. 2021).

In January 2017, the Louisiana Department of Environmental Quality ("Louisiana DEQ")

and Denka—but not EPA—entered into an administrative consent order to reduce chloroprene

emissions from the Denka Facility.    ECF 22, at 9, 15, ¶¶ 34, 53.    Denka allegedly complied

with the order by 2020.    *Id.*

## VI.    DENKA'S WITHDRAWN CASE AGAINST EPA

Denka filed suit against EPA on January 11, 2023, asking this Court to review the 2010

Assessment and the Denials under Section 704 of the APA, 5 U.S.C. § 704.    *See Denka*

*Performance Elastomer*, No. 23-147, ECF 1.    More specifically, Denka sought declarations that

the 2010 Assessment and Denials were arbitrary and capricious based on allegations that EPA

failed to consider what Denka believes to be the best available science.    *Id.* at 34, ¶¶ 1-3.

Denka also sought orders remanding the 2010 Assessment, requiring EPA to issue a new

assessment based on scientific information to be specified by the Court, and enjoining EPA from

relying on the 2010 Assessment in any context.    *Id.* ¶¶ 4-5.

EPA moved to dismiss Denka's case for lack of subject matter jurisdiction on March 20,

2023.    *Denka Performance Elastomer, LLC*, No. 23-cv-147, ECF 27.    On the response

deadline, Denka voluntarily dismissed that case under Fed. R. Civ. P. 41(a)(1)(B) in a Notice

that, among other things, stated, "[Denka's] counterclaims in *US v. DPE* [this case] are nearly

9

identical to the claims . . . that are being voluntarily dismissed . . ." *Denka Performance Elastomer*, No. 23-cv-147, ECF 30, at 2, ¶ 5.

## VII.   EPA INVESTIGATIONS AND LITIGATION

Before filing this case, EPA took preliminary investigatory steps that Denka refers to in its Answer and Counterclaims.   EPA performed a compliance investigation at Denka's neoprene manufacturing facility in LaPlace, Louisiana ("Denka Facility") during June 2016. *See* ECF 22, at 49, ¶ 63.   In January 2022, private parties submitted several administrative complaints to EPA alleging that the Louisiana Department of Health and the Louisiana DEQ—not Denka—are violating Title VI of the Civil Rights Act.   *Id.* at 52-53, ¶ 72.   As a step to facilitate the informal resolution process with those Departments, EPA's Office of External Civil Rights Compliance issued a letter to the Secretary of the Louisiana Department of Health and to the Secretary of the Louisiana DEQ in October 2022.   *See id.* at 26, 53, ¶¶ 10, 73-74, 76-54. This civil rights investigation and resolution process, to which Denka is not a party, is ongoing.

On February 28, 2023, EPA initiated this case by filing a civil complaint against Denka under Section 303 of the Clean Air Act, 42 U.S.C. § 7603.   *See* ECF 1.   In this case, EPA seeks injunctive relief based on allegations that chloroprene emissions from the Denka Facility present an imminent and substantial endangerment to public health.   EPA moved for a preliminary injunction on March 20, 2023, and Denka answered and counterclaimed on March 28, 2023.   ECF 9, 22.

## <u>ARGUMENT</u>

I.    **THE GOVERNMENT HAS SOVEREIGN IMMUNITY TO DENKA'S APA CLAIMS.**

First, all of Denka's APA Claims are counterclaims against EPA, because they seek *relief against EPA* in the form of judicial determinations that the 2010 Assessment and Denials themselves and EPA's development of them violate the APA.   APA compliance also is not an element of the United States' CAA Section 303 imminent and substantial endangerment claims against Denka, and Denka's first six "affirmative defenses"—which are essentially duplicative of its six counterclaims—therefore should be re-designated as counterclaims under Fed. R. Civ. P. 8(c)(2) to prevent Denka from unjustly pursuing claims over which this Court lacks subject matter jurisdiction.   *See also* Fed. R. Civ. P. 13(d).

Second, the Court lacks subject matter jurisdiction to decide any of Denka's APA Claims, because Denka cannot identify an applicable statutory waiver of the government's sovereign immunity that would allow it to review the 2010 Assessment and Denials under the APA.   It is black-letter law that "the United States may not be sued except to the extent that it has consented to suit by statute," and "[w]here the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed."   *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (quoting *Koehler v. United States*, 153 F.3d 263, 266 (5th Cir. 1998)); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

A waiver of sovereign immunity cannot be implied and must be unequivocally expressed by Congress in statutory text.   *Fort Bend Cty. v. U.S. Army Corps Eng'rs*, 59 F.4th 180, 189 (5th Cir. 2023); *FAA v. Cooper*, 566 U.S. 284, 290 (2012); *United States v. Nordic Vill., Inc.*,

503 U.S. 30, 33-34 (1992); *United States v. Mitchell*, 445 U.S. 535, 538 (1980).    The scope of statutory waivers, including those in the APA, also must be "construed strictly in favor of the sovereign."    *Fort Bend*, 59 F.4th at 189 (citing *Alabama-Coushatta Tribe*, 757 F.3d at 488 (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1992))); *Taylor Energy Co. LLC v. United States*, No. 20-1720, 2021 WL 1876845 *2 (E.D. La. May 10, 2021); *accord FDIC v. Meyer*, 510 U.S. at 475; *Dept. of Energy v. Ohio*, 503 U.S. 607, 615 (1993); *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 263 (1999); *United States v. Mitchell*, 463 U.S. at 212 (1983).    "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."    *Kokkonen*, 511 U.S. at 377 (citations omitted).

No such waiver exists in 28 U.S.C. § 1331 and the Declaratory Judgment Act, the statutes that Denka points to in the Complaint.    There also is no waiver in the Information Quality Act, another statute that Denka discusses.    Moreover, APA Section 704 is not applicable, because Section 704 only provides (in pertinent part) for the review of "final agency action for which there is no other adequate remedy in a court."    5 U.S.C. § 704; *Fort Bend*, 59 F.4th at 189.   For the reasons discussed below, the 2010 Assessment and Denials are not final agency actions for purposes of APA Sections 702 and 704.    APA Section 701(a)(2) also bars review of the Denials altogether because they are "committed to agency discretion by law," regardless of whether they are deemed final agency action.    Consequently, the Court lacks subject matter jurisdiction over all of Denka's APA Claims.

12

A.     **Denka's First Six "Affirmative Defenses" Should Be Re-Designated as Counterclaims.**

Under Fed. R. Civ. P. 8(c)(2), the Court may redesignate improperly pled defenses as counterclaims "if justice requires."    Allowing Denka to pursue six counterclaims in the guise of affirmative defenses would enable Denka to evade multiple jurisdictional defects, including the Court's lack of subject matter jurisdiction to decide them.    The Court therefore should redesignate Denka's first six "affirmative defenses" as permissive counterclaims under Rule 8(c)(2), and then dismiss them and Denka's other counterclaims for the reasons discussed below.

Under Fed. R. Civ. P. 8(c), "[a] matter is an 'affirmative defense' only if it assumes the plaintiff proves everything he alleges and asserts, [but] even so, the defendant wins."    *Germain v. U.S. Bank Nat'l Assoc.*, 920 F.3d 269, 273 n.14 (5th Cir. 2019) (quoting Wright & Miller, Affirmative Defenses—Defenses Not Mentioned in Rule 8(c), 5 Fed. Prac. & Proc. Civ. § 1271 (3d ed.)); *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999) ("An affirmative defense is generally a defense that, if established, requires judgment for the defendant *even if the plaintiff can prove his case*.") (emphasis added); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 477 & n.1 (7th Cir. 2019) ("an affirmative defense . . . assumes the plaintiff can prove everything she must to establish her claim but may still . . . defeat her claim").

Denka's first six "affirmative defenses" clearly do not fulfill this requirement.    All six of them seek judicial determinations that the 2010 Assessment or the Denials violated the APA. ECF 22, at 17-20.    But noncompliance with the APA is not a defense *to a CAA Section 303 imminent and substantial endangerment claim*, just as the United States does not allege—or need to establish—APA compliance.    Even if Denka prevailed on any one of its first six "affirmative defenses," the Court would not be required to enter judgement in Denka's favor *on the United*

13

*States' CAA Section 303 claims*.    Instead, and regardless of whether the United States prevailed on its claims, Denka would obtain *relief against EPA* in the form of judicial determinations that EPA's conduct, the 2010 Assessment and the Denials themselves violate the APA.    Those are not affirmative defenses to CAA Section 303 claims—they are counterclaims seeking declaratory relief against EPA under a different federal statute.    *See* Fed. R. Civ. P. 13(c) ("A counterclaim . . . may request relief that . . . differs in kind from the relief sought by the opposing party."); *Willner v. Dimon*, 849 F.3d 93, 110 (4th Cir. 2017) ("a purported affirmative defense does not qualify as one . . . if, after looking beyond the nomenclature of the request for relief, the remedy sought is actually a 'claim'").

        This is especially clear because the Court could only reach the APA determinations that Denka desires through summary judgment proceedings in which this Court would sit as an appellate tribunal, solely to determine whether EPA acted arbitrarily and capriciously when it issued the 2010 Assessment and Denials, and based solely on the administrative records before EPA at the time those documents issued[3]  and "not some new record made initially in the reviewing court."    *Luminant Generation*, 714 F.3d at 850; 5 U.S.C. § 706; *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *United States v. Schwarzbaum*, 24 F.4th 1355, 1364-65 (11th Cir. 2022) (quoting *Cnty. of L.A. v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999)); *see also SEC v. Chenery Corp. (II)*, 332 U.S. 194, 196 (1947).    That would be an entirely different proceeding from the litigation of the United States' CAA Section 303 claims, and neither "case" is dependent on the other because APA compliance is neither an element of

---

[3]  Moreover, no such administrative records exist, because the 2010 Assessment and Denials are not final agency actions for the reasons explained *infra* at 16-22 & n.4.

14

nor a defense to a Section 303 claim.   *See Am. Bioscience*, 269 F.3d at 1083; *Reiter v. Cooper*, 507 U.S. 258, 265 (1993) ("A defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be."); *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("A permissive counterclaim is an independent piece of litigation [that] . . . requires its own jurisdictional basis, and it proceeds as if a separate lawsuit.").   Consequently, Denka's first six affirmative defenses should be redesignated as permissive counterclaims, and *all* of Denka's APA Claims should be dismissed for lack of subject matter jurisdiction because the United States' sovereign immunity has not been waived.

**B.      The Declaratory Judgment Act, 28 U.S.C. § 1331, and the Information Quality Act Do Not Contain Sovereign Immunity Waivers.**

Two of the statutes that Denka identifies as the source of this Court's subject matter jurisdiction—28 U.S.C. § 1331 and the Declaratory Judgment Act—do not waive the government's sovereign immunity.   *See* ECF 22, ¶ 15.   "[I]t is well settled that Section 1331 'implies no general waiver of sovereign immunity.'"   *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989) (quoting *A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*, 611 F.2d 997, 1000 (5th Cir. 1980)).   Therefore, it cannot be relied upon by itself as the basis for jurisdiction over a claim against the United States.   *Id.* at 1385.   The same is true for the Declaratory Judgment Act, 28 U.S.C. § 2201, which creates a remedy for controversies over which the courts have jurisdiction but does not contain a waiver of the government's sovereign immunity.   *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956); *see Balistrieri v. United States*, 303 F.2d 617, 619 (7th Cir. 1962).

While Denka discusses the Information Quality Act extensively in its Counterclaims, that statute does not create any cognizable cause of action and does not contain any language that

could constitute a waiver of the government's sovereign immunity.   *See Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 184-85 (D.C. Cir. 2015) ("almost every court that has addressed an Information Quality Act challenge has held that the statute 'creates no legal rights in any third parties'") (quoting *Salt Inst. v. Leavitt*, 440 F.3d 156, 159 (4th Cir. 2006), and citing *Harkonen v. U.S. Dep't of Just.*, No. C 12–629, 2012 WL 6019571 *11 (N.D. Cal. Dec. 3, 2012) (collecting cases)).

### C.  Denka's APA Claims Do Not Fall within the APA's Waivers of Sovereign Immunity.

Denka's APA Claims also do not fall within the waiver of sovereign immunity in Section 702 of the APA.   Under Fifth Circuit precedent, Section 702 waives sovereign immunity for APA review only of "*final* agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added); *see Alabama-Coushatta Tribe*, 757 F.3d at 489 ("[W]hen judicial review is sought pursuant only to the general provisions of the APA[, t]here must be 'final agency action' in order for a court to conclude that there was a waiver of sovereign immunity.").   The United States is immune to Denka's APA claims, because IRIS assessments and the resolution of IQA requests to correct them are not "final" within the meaning of APA Section 704.

### 1.  The 2010 Assessment and Denials Are Not Final Agency Actions for Purposes of Judicial Review under the APA.

In order to be final for purposes of judicial review under the APA, an agency action must not only (1) "mark the consummation of the agency's decisionmaking process…," it must also (2) "be one by which 'rights or obligations have been determined,' or from which legal consequences will flow."   *Bennett v. Spear*, 520 U.S. 154, 177–78 (1977); *Fort Bend*, 59 F.4th

16

at 189 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990), and 5 U.S.C. § 704);

*Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (quoting *Bennett v. Spear*).

      To the extent the 2010 Assessment "consummates" anything, it is EPA's scientific

research and consultation process regarding potential human health hazard posed by chloroprene,

and the Denials document EPA's determination how to exercise its discretion "to undertake only

the degree of correction that [EPA concludes] is appropriate for the nature and timeliness of the

information involved" in response to Denka's requests for correction and reconsideration under

the Information Quality Act.   *See* 67 Fed. Reg. at 8458.   Neither the 2010 IRIS Assessment

nor the Denials are reviewable under the APA, however.   IRIS assessments are compilations of

scientific research that do not themselves determine any rights or obligations, and no legal

consequences flow from the completion of IRIS assessments or their addition to the IRIS

database.   The Denials, which only document EPA's evaluation of a request to exercise its

discretion to modify the information in the 2010 Assessment, also do not determine any rights or

obligations and no legal consequences flow from them.

      **a.**      **IRIS Assessments Do Not Have Any Legal Effect.**

      The core question raised by the second prong of the finality test in *Bennett v. Spear* is

whether the agency action in question "gives rise to 'direct and appreciable legal

consequences.'"   *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016

(emphasis added) (quoting *Bennett v. Spear*, 520 U.S. at 178).   In other words, "[a] final agency

action is one that imposes an obligation, denies a right, or fixes a legal relationship."   *Veldhoen

v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (citing *U.S. Dep't of Just. v. Fed. Lab.

Rel's Auth.*, 727 F.2d 481, 493 (5th Cir. 1984)).

IRIS assessments simply do not satisfy this requirement.    They are purely informational research documents that do not compel anyone to do anything.   *Chem. Manuf. Assoc.*, 28 F.3d at 1263 ("The [IRIS] database by itself has no preclusive effect; the data in the database constrain no one until so applied in a particular rule.").    Indeed, the IRIS database and the staff who develop the assessments that comprise it are part of EPA's Office of Research and Development, not any of the Agency's program offices that take final actions that legally bind persons to comply with specific requirements (*e.g.*, the Office of Air and Radiation, the Office of Enforcement and Compliance Assurance).    And no legal requirements or actions are dependent upon, or triggered by, the completion or addition of an assessment to the IRIS database.

To be sure, federal, state, and international agencies may use the *scientific information* contained in IRIS assessments to help screen for potential human health risks within their geographic or substantive authority, further evaluate such risks (if any), and decide whether to take regulatory or enforcement action.    But neither the completion of an assessment containing that information, nor the addition of that assessment to the IRIS database, requires that any such steps be taken—much less dictates the substance of such steps.    Agencies also are not precluded from taking such steps before an IRIS assessment is completed.

Indeed, the 2010 Assessment is closely analogous to the scientific research report that EPA issued under the Radon Act assessing potential health risks associated with second-hand smoke, which the U.S. Court of Appeals for the Fourth Circuit found to be non-final under the two-prong test in *Bennett v. Spear*.    *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852 (4th Cir. 2002).    Like the 2010 Assessment, the second-hand smoke research report *itself* had no direct regulatory effect on anyone and did not create any legal rights or obligations.

18

*Id.* at 855-56, 858-59.   For those reasons, and because "holding the report is subject to review

under the APA would expose to immediate court review the various results of controversial

governmental research as soon as published but before they are given regulatory effect, [the

Fourth Circuit is] of [the] opinion and hold[s] that there has not been final agency action under 5

U.S.C. §§ 702 and 704."   *Id.* at 862; *see also Salt Inst.*, 345 F.Supp.2d at 602 (collecting cases).

The same is true for the closely analogous 2010 Assessment, and even more so for the

Denials.   Indeed, the Denials do nothing more than document EPA's determination how to

exercise its discretion "to undertake only the degree of correction that [EPA concludes] is

appropriate for the nature and timeliness of the information" in the 2010 Assessment.   *See* 67

Fed. Reg. at 8458.   A document like the 2010 Assessment that has no independent legal effect,

and purely discretionary evaluations of whether or not to change information in such an

underlying document like the Denials, simply cannot satisfy the second prong of the finality test

articulated in *Bennet v. Spear*.

**b.   Third-Party Actions Have No Effect on Finality under the APA.**

Denka appears to contend that IRIS assessments impose sufficient legal consequences to

be "final action" because Denka entered into a voluntary administrative consent order with the

Louisiana DEQ under which the company agreed to reduce its chloroprene emissions, and

because private individuals pointed to the NATA (which is only partially based on information in

the 2010 Assessment) in an unsuccessful attempt to establish a duty of care in tort suits against

Denka.   *See* ECF 22, at 49-50, ¶¶ 62, 66; *see also* ECF 9-15, at 2, ¶ IV (Denka "voluntarily

entered into this ADMINISTRATIVE ORDER ON CONSENT") (emphasis in original).   The

Louisiana DEQ did not purport to enforce the 2010 Assessment, however, and the private

19

plaintiffs did not purport to base their claims on the 2010 Assessment itself.   And what state regulators and private individuals choose to do with the information in an IRIS assessment does not change the nature of the assessment itself, and so cannot make the IRIS assessment itself subject to judicial review under the APA.   *See Dalton v. Specter*, 511 U.S. 462, 469-70 (1994) (commission's base closure recommendations not reviewable because the only "action that will directly affect" targeted bases would be taken by the President, who has discretion to accept or reject recommendations); *Hindes v. FDIC*, 137 F.3d 148, 162-63 (3d Cir. 1998) ("[W]here a state actor relies upon a federal agency's notice, the state action does not convert the notice into a final agency act."); *Flue-Cured Tobacco*, 313 F.3d at 860-61 (EPA scientific report not rendered final and reviewable by state regulations promulgated in reliance on it, because regulations were "not direct consequences of the Report, but are the product of independent agency decisionmaking.").

### c. Federal Investigations Do Not Make Actions Final under the APA.

Denka also appears to contend that the 2010 Assessment somehow became reviewable when EPA conducted air monitoring to evaluate chloroprene levels in the vicinity, and then wrote a letter during an ongoing civil rights investigation of Louisiana agencies.   *See* ECF 22, at 48-49, 52-54, ¶¶ 61, 63, 72-73, 75-76.   These contentions lack merit.

A federal investigation, including the types of actions Denka complains of, does not constitute final agency action under the APA.   *Veldhoen*, 35 F.3d at 225 (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 239–45 (1980)); *Manchanda v. Lewis*, No. 21-1088, 2021 WL 5986877 *6 (2d Cir. Dec. 17, 2021) (citing *Veldhoen* and *Standard Oil Co*.)).   Instead, those being investigated must wait until the agency concludes its efforts and (if necessary) challenge

20

the agency's final determination or defend themselves in any resulting litigation—as Denka is now doing in this case.   *Veldhoen*, 35 F.3d at 225 (citing *Standard Oil*, 449 U.S. at 244–45). This is unsurprising, since investigations may reveal that no violations are taking place, or an agency may choose not to take action for other reasons.   Because EPA investigations are not final agency action, any use of information from the 2010 Assessment and Denials did not somehow make the 2010 Assessment and Denials final for purposes of judicial review under the APA.

### d.  This Clean Air Act Action Also Did Not Make the 2010 Assessment and Denials Final for APA Review Purposes.

This action under Section 303 of the Clean Air Act, filed by EPA on February 28, 2023, did not retroactively render the 2010 Assessment and the Denials themselves final and judicially reviewable.   *See United States v. Denka Performance Elastomer, LLC*, No. 23-cv-35 (E.D. La.). Instead, to the extent the United States relies on scientific information as a basis for the claims asserted against Denka, including information from the 2010 Assessment, Denka may defend itself by arguing that the information is inaccurate and why.   In making such arguments, Denka may choose to raise the same alleged defects that underpin its APA Claims.   Indeed, that is the gravamen of Denka's remaining four affirmative defenses, which this motion does not seek to strike or dismiss.   The important difference is that identifying flaws in scientific information is a permissible means for Denka to defend itself against the CAA Section 303 claims brought by the United States in this case, while asking the Court to invalidate the 2010 Assessment and the Denials themselves under the APA is not.

21

For all the reasons above, the 2010 Assessment and Denials are not final agency actions for purposes of judicial review under the APA.[4]   On this basis alone, all of Denka's APA Claims fall outside APA Section 704, and the Court lacks subject matter jurisdiction over them.

## 2.   APA Section 701(a)(2) Precludes Judicial Review of the Denials.

Moreover, even if the Court finds (or assumes) that the Denials are final, this Court still will lack subject matter jurisdiction to review them.   APA Section 701(a)(2), 5 U.S.C. § 701(a)(2), expressly provides that the APA does not apply to agency action that is committed to agency discretion by law.   Agency action "is committed to agency discretion by law when 'the statute [pursuant to which the action is taken] is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"   *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

Because the Information Quality Act and the implementing White House Office of Management and Budget Guidelines do not "provide judicially manageable standards that would allow meaningful judicial review to determine whether an agency properly exercised its discretion in deciding a request to correct a prior communication," the courts have found that APA Section 701(a)(2) bars APA review of agency denials of Information Quality Act requests

---

[4]   For the same reasons, the 2010 Assessment and Denials also are not "agency actions" as that term is defined in the APA.   5 U.S.C. §§ 551, 701(b)(2).   "Agency actions" are "circumscribed, discrete," and narrowly defined in the statute as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof."   5 U.S.C. § 551(13); *see Fort Bend*, 59 F.4th at 189 (citing 5 U.S.C. § 551(13)); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).   The 2010 Assessment and Denials do not fall within the definitions of, and are not equivalent to, any of those actions.   *See* 5 U.S.C. § 551(4), (6), (8), (10), (11); *Norton*, 542 U.S. at 62.

for correction or reconsideration.[5]    *Fam. Farm All. v. Salazar*, 749 F.Supp.2d 1083, 1092-95

(E.D. Cal. 2010) (quoting *Salt Inst.*, 345 F.Supp.2d 589, *aff'd sub nom. on alt. grounds*, *Salt

Inst.*, 440 F.3d 156); *Styrene Info. and Resch. Ctr., Inc.*, 944 F.Supp.2d 71, 82 (D.D.C. 2013)

(quoting *Salt Inst.* and *Fam. Farm All.*); *Muslim Advoc. v. U.S. Dep't of Just.*, No. 18-cv-02137-

JSC, 2019 WL 3254230 **7-11 (N.D. Cal. July 19, 2019); *Harkonen v. U.S. Dep't of Just.*, 2012

WL 6019571 at *16, *aff'd on alt. grounds*, 800 F.3d 1143 (9th Cir. 2015);  *Ams. for Safe Access

v. U.S. Dep't of Health & Hum. Servs.*, No. C 07-01049 WHA, 2007 WL 4168511, at *4 (N.D.

Cal. Nov. 20, 2007), *aff'd on other grounds*, 399 F. App'x 314 (9th Cir. 2010); *In re Operation of

the Mo. River Sys. Litig.*, 363 F.Supp.2d 1145, 1175 (D. Minn. 2004) (same), *aff'd in part and

vacated in part on alt. grounds*, 421 F.3d 618 (8th Cir. 2005); *see, e.g.,* 67 Fed. Reg. at 8458

("Agencies, in making their determination of whether or not to correct information . . . are

required to undertake only the degree of correction that they conclude is appropriate for the

nature and timeliness of the information involved.").   For this independent reason, Denka's APA

Claims challenging the Denials themselves (as opposed to EPA's use of information in them as a

basis for the Agency's imminent and substantial endangerment claims in this case) do not fall

within an APA waiver of sovereign immunity and the Court lacks subject matter jurisdiction

over them even if the Denials are found to be final agency actions.

---

[5]    It is unclear whether Denka also seeks APA review of the decision to pursue this CAA
Section 303 case.    While such claims are inappropriate for several reasons, as is most pertinent
here a decision to pursue an imminent and substantial endangerment claim is not an "agency
action" as defined in the APA.   *See supra* n.4.   The discretionary decision to file suit was,
moreover, made by the Department of Justice.   *See* 42 U.S.C. § 7603; 5 U.S.C. § 701(a)(2).

## II.     ALL APA CHALLENGES TO THE 2010 ASSESSMENT ARE NOW TIME BARRED, IF ONE ASSUMES THAT THE 2010 ASSESSMENT IS A FINAL AGENCY ACTION UNDER THE APA.

Finally, even if the Court were to find (or assume) that the 2010 Assessment is a final agency action for purposes of the APA, then all APA challenges to the Assessment itself (as opposed to EPA's use of information contained in it for the Agency's imminent and substantial endangerment claims) have been time barred since September 2016.   The Court therefore lacks subject matter jurisdiction over Denka's APA Claims challenging the 2010 Assessment.   *Am. Stewards of Liberty*, 960 F.3d 223, 229 & n.3 (5th Cir. 2020).

As discussed above, no APA claim accrued when the 2010 Assessment was finalized and added to the IRIS database, because IRIS assessments are not reviewable under the APA.   If the Court finds or assumes otherwise, however, then the applicable six-year statute of limitations in 28 U.S.C. § 2401 began to run in September 2010.   *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1286-87 (5th Cir. 1997); *Am. Stewards of Liberty*, 960 F.3d at 229 & n.3 (citing *Dunn-McCampbell*, 112 F.3d at 1286); *Ades v. United States*, No. 22-100442, 2022 WL 1198206 *1 (5th Cir. Apr. 22, 2022).

In this scenario, the statute of limitations governing challenges to the 2010 Assessment itself expired in September 2016.   Moreover, for this specific cause of action "failure to sue the United States within the limitations period is not merely a waivable defense.   It operates to deprive federal courts of jurisdiction." *Am. Stewards of Liberty*, 960 F.3d at 229 (quoting *Dunn-McCampbell*, 112 F.3d at 1287, and *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990)); *LeBouef v. Island Operating Co.*, 342 Fed. Appx. 983, 984 (5th Cir. 2009) (quoting *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 637 (5th Cir. 2003)).   The

24

Court therefore lacks subject matter jurisdiction over Denka's APA Claims purporting to challenge the 2010 Assessment.

**III.    DENKA'S FIRST SIX AFFIRMATIVE DEFENSES SHOULD BE STRICKEN UNDER FED. R. CIV. P. 12(f) IF THEY ARE NOT REDESIGNATED AS COUNTERCLAIMS.**

Finally, if Denka's first six affirmative defenses are not redesignated as permissible counterclaims, they should be stricken under Fed. R. Civ. P. 12(f) because, for reasons already discussed, they are legally insufficient.   The Court cannot make the determinations required by those "defenses" without performing APA reviews of the 2010 Assessment and Denials—which the Court lacks subject matter jurisdiction to do.   *See supra*, at 16-22 & n.4.   The defenses therefore are invalid as a matter of law, making them "insufficient" under Fed. R. Civ. P. 12(f). *Kaiser Aluminum and Chem. Sales, Inc*, 677 F.2d at 1057-58 (internal citations omitted). Because that insufficiency cannot be remedied, the defenses should be stricken without granting Denka leave to amend its answer.

<u>**CONCLUSION**</u>

For the foregoing reasons, Denka's first six affirmative defenses should be redesignated as permissive counterclaims under Fed. R. Civ. P. 8(c)(2), and all of Denka's APA Claims should be dismissed with prejudice under Rule 12(b)(1).   If Denka's first six affirmative defenses are not redesignated, they instead should be stricken under Rule 12(f) without leave to amend.