UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

DENKA PERFORMANCE ELASTOMER, LLC and DUPONT SPECIALTY PRODUCTS USA, LLC

CIVIL ACTION

NO. 23-735

SECTION: "J"(5)

**ORDER & REASONS**

Before the Court is a *Motion to Dismiss Denka Performance Elastomer, LLC's Counterclaims and First Six Affirmative Defenses for Lack of Subject Matter Jurisdiction* **(Rec. Doc. 57)**, filed by the United States of America ("the United States" or "the EPA") and an opposition filed by Denka Performance Elastomer, LLC ("Denka") (Rec. Doc. 66). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

**FACTS AND PROCEDURAL BACKGROUND**

Denka Performance Elastomer, LLC owns and operates a neoprene manufacturing facility in St. John the Baptist Parish. The United States of America has sued Denka, arguing that the chloroprene emissions from the facility constitute an imminent danger to public health in the surrounding communities under Section 303 of the Clean Air Act. The United States argues that the Denka facility is emitting chloroprene, a known carcinogen, in excess of 0.2 micrograms per cubic meter of air ("0.2 $\mu g/m^3$") thereby endangering the health of the individuals living near the facility. This 0.2 $\mu g/m^3$ figure is derived from the EPA's 2010 Toxicological Review of

Chloroprene ('2010 Review" or "Review")[1] which was published in the Integrated Risk Information System ("IRIS") database. The IRIS is a database which contains "hundreds of scientific reports developed by EPA's Center for Public Health and Environmental Assessment ("Center") that reflect EPA's assessment of the dose response information and human health hazard posed by oral and inhalation exposure to individual chemicals, groups of chemicals and complex mixtures." (Rec. Doc. 57, at 15). Denka attempted to challenge this figure administratively in June 2017 and in July 2021, and the EPA denied both challenges as well as an administrative petition seeking reconsideration of the second denial ("Denials").

Having exhausted its administrative remedies, Denka then filed a separate suit against the United States in this Court challenging the EPA's 2010 Review and the EPA's subsequent Denials of Denka's administrative challenges to this Review under the Administrative Procedure Act ("APA"). *See Denka Performance Elastomer LLC v. EPA*, No. 23-147 (E.D. La.). The United States moved to dismiss that case for lack of subject matter jurisdiction, and on the day its response was due, Denka chose to voluntarily dismiss its case, stating that its counterclaims in the instant matter were nearly identical to the claims they were voluntarily dismissing. (No. 23-147, Rec. Doc. 30, at 2). The United States has now moved to dismiss these counterclaims and Denka's first six affirmative defenses for lack of subject matter jurisdiction for the nearly identical reasons it moved for dismissal of Denka's claims in the related action.

[1] The actual figure of 0.2 μg/m$^3$ does not appear anywhere within the 2010 Review.

## LEGAL STANDARDS

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the

pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

**DISCUSSION**

The United States has moved to dismiss Denka's counterclaims as well as its first six affirmative defenses which the United States argues are mis-designated and are actually also counterclaims.[2] These affirmative defenses and counterclaims largely deal with the same subject matter: Denka's contentions that the EPA did not utilize the best scientific data available in creating the 2010 Review and in denying Denka's subsequent challenges to this Review and that this failure constituted a violation of the Administrative Procedure Act. (Rec. Doc. 22, at 17-20, 55-64). The United States argues that the Court lacks subject matter jurisdiction over the 2010 Review and the Denials because the United States has not waived sovereign immunity for these particular claims.

[2] However, the Court has no need to make this determination due to the lack of subject matter jurisdiction over these claims as a whole. Whether these claims were properly designated as affirmative defenses and dismissed under Federal Rule of Civil Procedure 12(f) or re-designated as counterclaims and dismissed under rule 12(b)(1) does not affect the outcome of this motion.

## I. Statute of Limitations

One counterclaim and one affirmative defense can be quickly dealt with before addressing the merits of the United States' arguments concerning sovereign immunity. Denka's first counterclaim seeks relief on the grounds that "the issuance and application of the 2010 Review setting a 0.2 μg/m$^3$ 1-in-10,000 risk-based value for chloroprene was arbitrary, capricious, an abuse of discretion, and not in accordance with law in violation of the APA, because Counterclaim-Defendants failed to consider the best available scientific data despite concerns raised by qualified peer reviewers." (Rec. Doc. 22, at 55). Denka's first affirmative defense rests on nearly identical grounds: "In conducting the 2010 Review, EPA was obligated to consider the best scientific data available to EPA at the time of its decision, and its failure to do so, resulting in the setting of a 0.2 μg/m$^3$ value for chloroprene, was arbitrary, capricious, an abuse of discretion, and not accordance with law, in violation of the APA." *Id.* at 17. Both claims rest solely on the issuance of the 2010 Review itself and do not address the EPA's subsequent Denials or usage of the information contained within the Review.

Assuming that the 2010 Review would constitute a final agency action which is an exception to the United States' sovereign immunity, the EPA argues that any APA challenges against it are time barred and have been so since 2016. (Rec. Doc. 57, at 34). The EPA reasons that even if IRIS assessments such as the 2010 Review were reviewable under the APA, 28 U.S.C. § 2401 would apply to bar these claims. Section 2401 states that ". . . every civil action commenced against the United States shall be

barred unless the complaint is filed within six years after the right of action first accrues." The EPA concedes that the EPA's *use* of the information contained in the 2010 Review falls outside of this time bar, meaning that only Denka's first counterclaim and first affirmative defense challenging the issuance of the 2010 Review would be impacted.

Denka does not seriously dispute that this six-year statute of limitations is applicable in this case. Instead, Denka argues that "the fact that EPA did not act sooner to directly enforce the 0.2 $\mu g/m^3$ standard should not allow EPA to now hide behind the statute of limitations and avoid judicial review of the 2010 Review and its resulting 0.2 $\mu g/m^3$ standard altogether." (Rec. Doc. 66, at 30). Furthermore, Denka asserts that it was forced to exhaust its administrative remedies before seeking judicial review. However, Denka does not explain why this procedural requirement should affect a statute of limitations proscribed by statute which operates to deprive the Court of jurisdiction. *See Dunn-McCampbell Royalty Interest, Inc. v. National Park* Service, 112 F.3d 1283, 1287 (5th Cir. 1997) ("The applicable statute of limitations is one such term of consent, and failure to sue the United States within the limitations period is not merely a waivable defense. It operates to deprive federal courts of jurisdiction."). Therefore, Denka's challenge to the 2010 Review itself is time barred.

However, "a plaintiff who misses this window may still obtain effective review of the regulation by instead bringing a challenge within six years of a later final agency action that applies the regulation to the plaintiff." *Am. Stewards of Liberty v.*

*Department of Interior*, 960 F.3d 223, 229 (5th Cir. 2020). In such a situation, however, "an agency's application of a rule to a party creates a new, six-year cause of action to challenge to the agency's constitutional or statutory authority." *Dunn-McCampbell*, 112 F.3d at 1287. In other words, a new cause of action attaches to an agency's application of a rule, even though a challenge to the initial publication of the rule may be time barred. Therefore, even though Denka's challenges to the initial promulgation of the 2010 Review may be extinguished, Denka's other counterclaims are not similarly time barred and only Denka's first counterclaim and first-affirmative defense are dismissed for lack of subject matter jurisdiction on this ground.

## II. <u>Sovereign Immunity</u>

The United States argues that this Court lacks subject matter jurisdiction over Denka's remaining APA claims because the government has not waived sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). Any such waiver must be explicitly expressed by Congress via statute, and any perceived waiver of immunity must be strictly construed in favor of the sovereign. *Fort Bend County v. United States Army Corps of Engineers*, 59 F.4th 180, 189 (5th Cir. 2023).

Denka argues that Section 702 of the APA waives sovereign immunity as to its counterclaims in this matter. (Rec. Doc. 66, at 12). However, the United States asserts that sovereign immunity has not been waived in this circumstance because the 2010 Review and subsequent Denials do not constitute final agency actions. Because this

Court has already determined that Denka's challenge of the issuance 2010 Review itself is time barred, the Court declines to evaluate whether the United States would otherwise have had sovereign immunity over this claim.

Under Section 702 of the APA, the United States has waived sovereign immunity for agency actions otherwise subject to judicial review. 5 U.S.C. § 702. *See also Fort Bend County*, 59 F.4th at 189; *Alabama-Coushatta Tribe of Texas v. U.S.*, 757 F.3d 484, 488 (5th Cir. 2014). In order to sue under Section 702, two requirements must be met: first, the plaintiff must point to some "'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review." *Alabama-Coushatta Tribe of Texas,* 757 F.3d at 489. This agency action must also qualify as a final agency action when the claim in question is brought under the general review provisions of the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). A final agency action is one that, first, "[marks] the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature" and second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The second requirement for suit under Section 702 is that the plaintiff must have "suffered a legal wrong" because of the challenged agency action or have been "adversely affected or aggrieved by that action within the meaning of the relevant statute." *Alabama-Coushatta Tribe of Texas*, 757 F.3d at 488. Therefore, both of these requirements must be separately satisfied as to each action Denka is challenging under the APA.

Denka argues that the EPA took a final agency action when it established the 0.2 $\mu g/m^3$ standard, "including its denial of [Denka's] challenges to the 2010 Review from which EPA derived that standard and EPA's efforts to enforce that standard." (Rec. Doc. 66, at 13). Denka argues that these Denials constitute agency actions "because they constitute, or are the equivalent of, EPA's denial of relief specifically provided for in EPA's Guidelines." *Id.* at 14. Denka argues that these Denials are final actions because they represent "the consummation of EPA's decision-making process" and leave no further room for agency review. *Id.* at 15.

The United States, however, argues that these Denials do not constitute final agency actions under the APA because the Denials are nothing more than an exercise of agency discretion.[3] The United States argues that the 2010 Review itself does not have any independent legal consequences, and therefore, "purely discretionary evaluations of whether or not to change information in such an underlying document like the Denials, simply cannot satisfy the second prong of the finality test articulated in *Bennett v. Spear*." (Rec. Doc. 57, at 29). The United States further argues that, even if the Court considers the Denials to be final agency actions, APA Section 701(a)(2) bars judicial review. Under this section of the APA, there is a presumption of reviewability, but this presumption does not extend to an agency action that is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). An agency action is committed to agency discretion when "the statute is drawn so that a court would have

[3] The United States also dedicates room in its brief to discussing why the Declaratory Judgment Act and 28 U.S.C. § 1331 do not waive sovereign immunity. However, Denka does not contest these points in its opposition, and therefore there is no need for the Court to address them here.

no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

The statute at issue in this instance is the Information Quality Act ("IQA"). Pub. L. 106–554, 114 Stat. 2763, 2763A–153–2763A–154 (2000) (codified at 44 U.S.C. § 3516 note). This regulation directs the Office of Management and Budget ("OMB") to issue guidelines to federal agencies which shall

> (1) apply to the sharing by Federal agencies of, and access to, information disseminated by Federal agencies; and
> (2) require that each Federal agency to which the guidelines apply—
>> (A) issue guidelines ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by the agency, by not later than 1 year after the date of issuance of the guidelines under subsection (a);
>> (B) establish administrative mechanisms allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency that does not comply with the guidelines issued under subsection (a); and
>> (C) report periodically to the Director—
>>> (i) the number and nature of complaints received by the agency regarding the accuracy of information disseminated by the agency; and
>>> (ii) how such complaints were handled by the agency.

*Id.* In compliance with the IQA, the OMB issued guidelines requiring agencies to establish policies regarding whether and how to correct agency-disseminated information and create an administrative appeals process to review these decisions. 67 Fed. Reg. 8452, 8459 (Feb. 22, 2002). The OMB guidance also states that "[a]gencies, in making their determination of whether or not to correct information, may reject claims made in bad faith or without justification, and are required to undertake only the degree of correction that they conclude is appropriate for the nature and timeliness of the information involved, and explain such practices in their

annual fiscal year reports to OMB." 67 Fed. Reg. at 8458. The United States asserts that, based on these OMB guidelines, Denka's administrative challenges to the 2010 Review are fully committed to agency discretion and are outside the jurisdiction of this Court. (Rec. Doc. 57, at 32).

Denka, however, argues that the United States is pointing to the wrong guidelines. Denka asserts that the EPA does not have "absolute discretion in establishing an enforceable emissions standard for chloroprene," and the standard the Court should apply in reviewing the 2010 Review and the Denials is instead the "best available science" standard. (Rec. Doc. 66, at 24). Denka argues that the EPA has adopted guidelines which require it to use the best available science when disseminating "influential scientific information regarding human health, safety, or environmental risk assessments." UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, GUIDELINES FOR ENSURING AND MAXIMIZING THE QUALITY, OBJECTIVITY, UTILITY, AND INTEGRITY OF INFORMATION DISSEMINATED BY EPA (2002). (hereinafter called "EPA Guidelines"). Denka further asserts that this "best available science" standard is "a familiar one in administrative law," which courts frequently apply. (Rec. Doc. 66, at 26). *See Chlorine Chemistry Council v. EPA,* 206 F.3d 1286 (D.C. Cir. 2000). Additionally, Denka argues that these guidelines provide a judicially manageable standard for the EPA's Denials. Denka points to Section 8.1 of the EPA Guidelines which provides, in part, "EPA's Office of Environmental Information (OEI) manages the administrative mechanisms that enable affected persons to seek and obtain, where appropriate, correction of information disseminated by the Agency

that does not comply with EPA or OMB Information Quality Guidelines." EPA Guidelines, § 8.1. Denka's argument on this subject is brief and amounts to little more than a single sentence implying that Section 8.1 of the EPA Guidelines imports this "best available science" standard to requests for corrections of information. (Rec. Doc. 66, at 27).

In reply, the United States argues that Denka's arguments regarding Section 701 are misplaced. First, the United States asserts that "Denka appears to be rebutting an argument that the United States did not make, *i.e.*, that Section 701(a)(2) bars review of the 2010 Assessment." (Rec. Doc. 80, at 6). The United States does not contest that this standard would apply to documents which are final and reviewable under the APA. Additionally, because any arguments directed solely at the 2010 Review itself are time-barred, Denka is prevented from arguing that the EPA did not utilize the best available science in creating the 2010 Review. Second, the United States argues that the best available science argument is not relevant in this case because "it is based on the IQA's requirements for documents in which an agency in fact disseminates scientific information. The three Denials are not such documents, however. They instead deny two administrative petitions seeking correction of the 2010 Assessment and an administrative petition seeking reconsideration of the second Denial." *Id.* In short, the United States argues that the best available science standard could arguably apply only to the 2010 Review and not to the Denials because they are not scientific documents.

Denka does not attempt to explain how Section 8.1 of the EPA Guidelines provides a judicially manageable standard for review, and instead merely asserts that "EPA's commitment to correct information that does not reflect the best available science (*id.* § 8.1) is equally manageable and enforceable." (Rec. Doc. 66, at 27). Further, it is important to note that the "best available science" language does not appear anywhere in Section 8 of the EPA Guidelines which outlines the administrative mechanisms for correction of information. Although these guidelines provide a *procedure* for such requests for correction, they do not provide a judicially manageable standard to evaluate denials of such requests. The closest the EPA Guidelines come to describing the standard of review is "considerations relevant to the determination of appropriate corrective action include the nature and timeliness of the information involved and such factors as the significance of the error on the use of the information and the magnitude of the error." EPA Guidelines, § 8.4. They do not provide any information on how and whether the EPA determines if there is an "error," and they do not provide any standards the EPA must follow in coming to this determination. Therefore, the Court must look back at the OMB Guidelines in search of a judicially manageable standard.

Although the Fifth Circuit has not addressed whether judicial review is permitted of these particular OMB guidelines under APA Section 701(a)(2), the United States suggests that other courts have found that no such review is permitted. For example, in *Salt Institute v. Thompson*, 345 F.Supp.2d 589, 602 (E.D. Va. 2004), the court found that "neither the IQA nor the OMB Guidelines provide judicially

manageable standards that would allow meaningful judicial review to determine whether an agency properly exercised its discretion in deciding a request to correct a prior communication." Referring to the same passage of the OMB Guidelines relevant in this case, the court stated that these guidelines "insulate the agencies determinations of when correction of information contained in informal agency statements is warranted." *Id.* at 603. Additionally, the United States points to *Muslim Advocates v. U.S. Justice Department*, 2019 WL 3254230 (N.D. Ca. 2019). In addition to finding that the IQA and OMB Guidelines do not provide standards for judicial review, the court in *Muslim Advocates* evaluated whether DOJ and DHS internal regulations provided judicially manageable standards. The DOJ standards contain language very similar to those in the EPA Guidelines which Denka urges this Court to use. The DOJ guidelines state "any corrective action will be determined by the nature and timeliness of the information involved and such factors as the significance of the error on the use of the information and the magnitude of the error. DOJ is not required to change, or in any way alter, the content or status of information simply based on the receipt of a request for correction." *Id.* at *8. The court found that this language as well as the language in the DHS Guidelines was "near verbatim discretionary language regarding when correction is necessary." *Id.*

Here, the EPA Guidelines similarly state "considerations relevant to the determination of appropriate corrective action include the nature and timeliness of the information involved and such factors as the significance of the error on the use of the information and the magnitude of the error." The Court cannot find that these

guidelines or the OMB Guidelines provide a judicially manageable standard. Therefore, under APA Section 701(a)(2), Denka's challenges to the Denials are barred from review because they were committed to agency discretion and are therefore protected by sovereign immunity. Denka's second, third, fourth, and fifth affirmative defenses and second and third counterclaims deal with the Denials and are therefore dismissed for lack of subject matter jurisdiction.

## III. Denka's Remaining Affirmative Defenses and Counterclaims

Denka's remaining affirmative defense and three remaining counterclaims are related to but do not directly challenge the 2010 Review or the Denials. Therefore, the Court will address them separately. Denka's fourth counterclaim alleges that "Counterclaim-Defendants' actions to enforce the 0.2 $\mu g/m^3$ IUR value for chloroprene against the Facility, including in the pending ISE Action, is arbitrary, capricious, an abuse of discretion, and not in accordance with law in violation of the APA, because Counterclaim-Defendants have failed to consider the best scientific data available at the time." (Rec. Doc. 22, at 61). The "pending ISE Action" refers to the United States' pending claim in this matter under Section 303 of the Clean Air Act. *Id.* at 23. It appears then that Denka is challenging the very decision to bring this lawsuit under the APA. Of course, Denka cannot challenge this lawsuit under the APA for multiple reasons, not the least of which is that the Department of Justice chose to pursue this lawsuit, not the EPA itself. Therefore, this claim is dismissed.

Denka's fifth counterclaim alleges that "Counterclaim-Defendants have arbitrarily and capriciously reversed 30 years of EPA risk assessment policy without

reasoned explanation by treating an estimated 1-in-10,000 risk based on the 2010 IUR in a strict, 'bright line' fashion." *Id.* at 63. Denka's sixth affirmative defense is nearly identical to this claim. *Id.* at 20. This claim has several issues. First, Denka does not identify how this standard has been applied in a bright-line fashion.[4] Second, Denka does not state why or what law supports a claim that applying this standard in a bright-line fashion would be problematic. Denka merely states that the EPA's use of this standard "without reasoned explanation was arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the APA." *Id.* at 63. This claim is vague and unspecific and does not describe circumstances upon which relief can be granted. Therefore, Denka's fifth counterclaim is dismissed, and Denka's sixth affirmative defense is stricken. However, Denka is granted leave to amend these claims assuming that Denka can provide a basis which does not rest solely on the issuance of the 2010 Review, the Denials, or the institution of the United States' Section 303 action.

Denka's sixth and final counterclaim is also very similar, alleging that

> 113. In numerous regulatory actions relating to the Facility, including but not limited to the ISE Action, the NEIC inspections, the Title VI Letter of Concern, and in numerous communications with LDEQ and others, EPA has relied on the 2010 IUR as the sole basis for action and has ignored all other available scientific information, including the Ramboll PBPK Model, the Marsh epidemiology studies, and the Louisiana Tumor Registry data.
> 114. Under the Clean Air Act, the Information Quality Act, and the APA, EPA has an affirmative duty to evaluate available scientific evidence in making risk determinations affecting DPE.

[4] In fact, in another section of its answer, Denka directly quotes an EPA letter to the Louisiana Department of Environmental Quality stating that the standard is "not a 'bright line' for determining whether a risk level is considered safe or acceptable." (Rec. Doc. 22, at 49).

*Id.* at 64. As to the "ISE action" which is the Section 303 claim in this case, this Court has already stated that Denka cannot challenge the instant lawsuit under the APA. The NEIC inspection refers to a compliance investigation performed by the EPA's National Environmental Investigations Center in June 2016. Denka's answer contains scanty references to this inspection and does not explicitly state that this inspection utilized the 0.2 $\mu g/m^3$ standard in any way, nor does it explain why doing so would be a violation of the APA. *Id.* at 48, 49. As to the Title VI Letter of Concern, Denka alleges that this letter recommended that the Louisiana Department of Environmental Quality "(i) conduct a cumulative impact analysis of the neighboring community; (ii) monitor area chloroprene concentrations based on the 0.2 $\mu g/m^3$ value; (iii) issue renewed air permits to the Facility only "after completion of the cumulative impact analysis"; and (iv) "work to establish limits in Industrial Corridor air permits [including the Facility's air permits] that, in the aggregate, limit air emissions of carcinogens that have a mutagenic mode of action, including chloroprene." *Id.* at 54. Merely recommending an action to a third party does not constitute a reviewable agency action for purposes of the APA as no legal consequences flow directly from it. *See Bennett* 520 U.S. 177-78. *See also Air California v. U.S. Dept. of Transp.*, 654 F.2d 616, 621 (9th Cir. 1981) (FAA warning that it would pursue legal action without compliance with federal regulations was not a final agency action). Denka's vague statement regarding "numerous communications with LDEQ and others" also cannot constitute an agency action.

None of the "regulatory actions" Denka lists in its sixth counterclaim are actually agency actions reviewable under the APA.

Denka's final assertion that the EPA has an "affirmative duty to evaluate available scientific evidence in making risk determinations affecting DPE" is also not persuasive. Denka does not allege any facts suggesting that the EPA did not consider the alternative evidence cited by Denka as superior to the 2010 Review. Denka merely alleges that the EPA chose not to update the 2010 Review when presented with Denka's new evidence in issuing the Denials. The Court has already explained why it does not have subject matter jurisdiction over the Denials. Therefore, the sixth counterclaim is also dismissed.

Although the Court has dismissed Denka's claims under the APA, Denka may still challenge the science behind the United States' Section 303 action. The United States openly admits that "Denka is free to assert that EPA based this CAA imminent and substantial endangerment case on inaccurate scientific information and explain why it considers that information to be inaccurate." (Rec. Doc. 57, at 12). Dismissing Denka's APA claims in no way hinders its ability to defend itself or to argue that the 0.2 $\mu g/m^3$ level is inaccurate or flawed. In fact, such a scientific inquiry is the central issue of the United States' pending Motion for Preliminary Injunction. (Rec. Doc. 9). In dismissing these claims for lack of subject matter jurisdiction, the Court is not issuing a judgment on the merits.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that the United States' *Motion to Dismiss Denka Performance Elastomer, LLC's Counterclaims and First Six Affirmative Defenses for Lack of Subject Matter Jurisdiction* **(Rec. Doc. 57)** is **GRANTED**. Denka's first five affirmative defenses are **STRICKEN without leave to amend**, and the sixth affirmative defense is **STRICKEN with leave to amend**. Denka's counterclaims are **DISMISSED with prejudice** with the exception of the fifth counterclaim which is **DISMISSED without prejudice**.

New Orleans, Louisiana, this 30th day of August, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE