IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL ACTION NO. 2:23-cv-735 |
| v. | SECTION J(5) |
| DENKA PERFORMANCE ELASTOMER, LLC and DUPONT SPECIALTY PRODUCTS USA, LLC | JUDGE BARBIER |
| | MAGISTRATE JUDGE NORTH |
| Defendants. | |

**DUPONT SPECIALTY PRODUCTS USA, LLC'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**NOW INTO COURT**, through undersigned counsel, comes defendant, DuPont Specialty Products USA, LLC ("Specialty"), who pursuant to this Court's Scheduling Order (Rec. Doc. 103), respectfully submits these proposed Findings of Fact and Conclusions of Law.

**I.  PROPOSED FINDINGS OF FACT**

1. The United States of America ("Plaintiff") brought this action against Denka Performance Elastomer, LLC ("Denka") pursuant to the Clean Air Act Section 303, 42 U.S.C. § 7603, alleging that the chloroprene emissions produced by Denka at its Pontchartrain Plant (the "Facility") pose an imminent and substantial endangerment and seeking that Denka immediately reduce its chloroprene emissions at the Facility. (***Rec. Doc. pp. 1-5***).

2. The Complaint does not make allegations of misconduct or otherwise assert liability of Specialty; Plaintiff "does not make any claims regarding [Specialty's] fault in in this matter at all." (***Rec. Doc. 89 at pp. 8-9***).

3. The relief sought from Specialty in this matter "is based on Fed. R. Civ. P. 19(a) and the All Writs Act, 28 U.S.C. § 1651." (***Rec. Doc. 1 at p. 2***).

4. The Plaintiff originally sought injunctive relief in which Denka would be ordered to engage in constructing specific emission control projects.

5. On October 20, 2023, the Plaintiff issued its Statement of Final Relief in which it revised the relief that it originally sought. This Statement is binding upon Plaintiff.

6. Plaintiff's Statement of Final Relief does not call for any action to be taken by, or even specifically mention, Specialty.

7. In 2015, Denka purchased the Facility from E. I. du Pont de Nemours and Company ("EID"). (***Rec. Doc. 49-1 at p. 3, Rec. Doc. 22 at p. 28***).

8. EID is a completely separate corporate entity from Specialty.

9. The purchase of the Facility did not include the land underlying the Facility. (***Rec. Doc. 89 at p. 1***).

10. Effective November 1, 2015, Denka and EID entered into a ground lease for the immovable property underlying the Denka Facility (the "Ground Lease"). (***Rec. Doc. 49-1 at p. 3***).

11. In 2019, EID transferred the landlord's rights under the Ground Lease to Specialty. (***Rec. Doc. 89 at p. 1***).

12. Specialty is Denka's current landlord under the Ground Lease. (***Rec. Doc. 89 at p. 1***).

13. Denka currently owns and is the sole operator of the Facility. (***Rec. Doc. 22 at p. 28, Rec. Doc. 62 at p .9***).

14. Specialty has never been an operator of the Facility.

15. Neither Denka nor Specialty has brought a claim against one another in this suit.

16. Denka has not sought injunctive relief against Specialty in this suit.

17. The Plaintiff is not a party to the Ground Lease.

18. There is no contractual dispute between Denka and Specialty at issue in this suit. (***Rec. Doc. 62 at p. 9***).

19. Denka does not challenge Specialty's rights under the Ground Lease in this suit.

20. No party seeks to invalidate or modify the Ground Lease and/or any provision therein in this suit.

21. Specialty does not need to be a party to this action to protect its interests under the Ground Lease.

22. Plaintiff's Statement of Final Relief does not implicate the consultation provisions in the Ground Lease.

23. Plaintiff's Statement of Final Relief does not ask that the Ground Lease be enforced, nor could it.

24. The consent provisions in the Ground Lease all concern making certain that human health and the environment are protected.

25. The Ground Lease generally provides that Specialty's consent cannot be unreasonably withheld.

26. Unlike Plaintiff's Motion for a Preliminary Injunction, Plaintiff's Statement of Final Relief does not instruct Denka to undertake specific construction projects that could

3

have otherwise potentially implicated landlord consent provisions under the Ground Lease. *(Rec. Doc. 113-6)*.

27. The Statement of Final Relief calls for the immediate shutdown of the Facility operations until Denka reduces the Facility's emissions to result in achievement of Plaintiff's requested ambient air standards. *(Rec. Doc. 113-6).*

28. Any claimed delay or extension of any time period of no emissions following the requested shutdown cannot cause or contribute to emissions, only reduce them.

29. Pursuant to the Statement of Final Relief, if and when Denka identifies feasible emission reduction projects to implement, and after a successful showing of emission reduction to Plaintiff's requested standard, only then may Denka restart the Facility. *(Rec. Doc. 113-6).*

30. Denka has been unable to identify any feasible emission reduction project that can meet the standard set forth in the Statement of Final Relief. (*Rec. Doc. 139-2 at ¶ 10).*

31. Denka's EH&S manager has recommended that the effort not even be undertaken if a judgment is entered requesting a shutdown. (*Rec. Doc. 139-2 at ¶ 4*).

32. There is no record evidence that EID or Specialty have, historically or otherwise, withheld consent or substantially delayed Denka's emission reduction projects and activities, including but not limited to, construction activities necessary to reduce emissions.

33. Plaintiff does not allege that Specialty has withheld or is withholding consent regarding any of Denka's emission reduction construction projects and activities.

34. In January of 2017, with the support and active participation of the Environmental Protection Agency ("EPA"), Denka and the Louisiana Department of Environmental

Quality ("LDEQ") entered into an Administrative Order on Consent ("AOC") (***Rec. Doc. 131-26, Rec. Doc. 139-1 at ¶¶ 13-14).***

35. Pursuant to the AOC, Denka has already executed on significant emission reduction projects, like the installation and implementation of a regenerative thermal oxidizer ("RTO"). *(**Rec. Doc. 131-2, pp. 20-21, Rec. Doc. 131-26, Rec. Doc. 139-1 at ¶¶ 13-14, Rec. Doc. 139-3 at ¶ 34).***

36. The record is void of any evidence reflecting that Specialty impeded Denka from constructing, installing and implementing the AOC projects, or otherwise interfered with Denka's ability to construct, install and implement these projects.

37. Denka has not expressed an expectation, risk, or even concern that Specialty would unreasonably withhold its consent under the Ground Lease regarding any current or future emission reduction project or activity.

38. Testimony established that Specialty and Denka have a cordial and cooperative landlord-tenant relationship.

39. Denka has not sought to keep Specialty in the case.

40. The record does not support a conclusion that Specialty is a necessary party to this suit, nor that any shutdown order requires Specialty for its implementation nor could be frustrated by Specialty. As such, no judgment can be entered against it.

II. **PROPOSED CONCLUSIONS OF LAW**

1. The burden of proof to establish all elements of its request for relief against Specialty was on Plaintiff. Plaintiff has failed to meet its burden.

2. The Complaint does not assert claims against Specialty pursuant to Clean Air Act Section 303, 42 U.S.C. § 7603.

5

3. The Statement of Final Relief does not assert claims against Specialty pursuant to Clean Air Act Section 303, 42 U.S.C. § 7603.

4. There is no basis in law or fact to hold Specialty liable pursuant to the Clean Air Act Section 303, 42 U.S.C. § 7603.

5. Plaintiff's Statement of Final Relief limits its claims made in this suit.

6. Plaintiff's claims cannot be expanded beyond those in the Complaint, as reduced in the Statement of Final Relief.

7. Plaintiff's Statement of Final Relief does not call for any action to be taken by, or even specifically mention, Specialty.

8. No judgment can be entered against Specialty based upon the Statement of Final Relief in this suit.

9. The Complaint does not make actual allegations of misconduct or other liability as to Specialty; Plaintiff "does not make any claims regarding [Specialty's] fault in in this matter at all." (***Rec. Doc. 89 at pp. 8-9***).

10. The relief sought from Specialty in this action "is based on Fed. R. Civ. P. 19(a) and the All Writs Act, 28 U.S.C. § 1651." (***Rec. Doc. 1 at p. 2***).

11. Federal Rule of Civil Procedure 19 "establishes two broad categories of required parties." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015).

12. First, a party is "required" if, "in that person's absence, the court cannot accord complete relief among existing parties." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (quoting Fed. R. Civ. P. 19(a)(1)(A)). "[T]he equitable relief sought in an action may make an absent party required." *Ward v. Apple Inc.*, 791 F.3d 1041, 1049 (9th Cir. 2015). For instance, "all parties who may be affected by a suit

to set aside a contract must be present." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983). No action was brought in this matter to set aside a contract.

13. "The requirement under Rule 19(a)(1) that complete relief be available does not mean that every type of relief sought must be available, only that meaningful relief be available." *Iron Workers Loc. Union No. 17 Ins. Fund & its Trustees v. Philip Morris Inc.*, 182 F.R.D. 512, 518 (N.D. Ohio 1998) (citations and quotations omitted). Plaintiff seeks a shutdown against Denka and no further emissions in excess of the levels that would cause exceedances of the proposed ambient standards. This relief is available without any order against Specialty.

14. Second, a "party is required if: that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (quoting Fed. R. Civ. P. 19(a)(1)(B)).

15. "[T]o be a required party under Rule 19(a)(1)(B) because of an interest in the subject matter of the action, the party must assert its own interest." *Colbert v. First NBC Bank*, No. CIV.A. 13-3043, 2014 WL 1329834, at *3 (E.D. La. Mar. 31, 2014) (citing *Grand Acadian, Inc. v. Flour Corp.* 2008 WL 408874 at *1 (W.D. La. Feb.12, 2008)). Specialty has not done so.

16. In actions to 'set aside' or 'decimate' a contract, parties to that contract are required parties to the action." *Physics, Materials, & Applied Mathematics Rsch. LLC v. Yeak*, No. CV-20-00379-TUC-JCH, 2022 WL 3286585, at *4 (D. Ariz. Aug. 11, 2022) (finding that when contract rights at merely implicated, the parties are not necessary under Rule 19(a)). No action has been brought to set aside a contract in this suit.

17. In the present case, Plaintiff does not directly challenge the Ground Lease, or any provision therein.

18. Additionally, Plaintiff does not seek to alter the rights of the parties under the Ground Lease, nor could it.

19. Where the allegedly necessary party under 19(a) "maintains a neutral, disinterested posture towards a dispute, they have not claimed an interest*." Physics, Materials, & Applied Mathematics Rsch. LLC v. Yeak*, No. CV-20-00379-TUC-JCH, 2022 WL 3286585, at *3 (D. Ariz. Aug. 11, 2022). Additionally, when a party "does not deem its own interests substantially threatened by the litigation, the court should not second-guess this determination[.]") *United States v. San Juan Bay Marina*, 239 F.3d 400, 407 (1st Cir. 2001). Specialty has chosen to take a neutral posture to this suit.

20. Plaintiff's Statement of Final Relief does not implicate the Ground Lease, and Specialty does not need to be a party to this action to protect its interests under to the Ground Lease.

21. The record does not support a finding that Specialty is even a necessary party to this action, hence no judgment may be entered against it.

22. The All Writs Act, 28 U.S.C. § 1651, provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

23. A court's power to enforce provisions of consent orders comes principally from the All Writs Act, which "empowers Courts to issue extraordinary writs 'as may be necessary or appropriate to effectuate and prevent the frustration of an order it has previously issued.'" *United States v. Int'l Bhd. of Teamsters*, 907 F.2d 277, 280 (2d Cir. 1997) (quoting *United States v. N.Y. Tel. Co.,* 434 U.S. 159, 172 (1977)).

24. "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, encompasses even those who have not taken any affirmative action to hinder justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977).

25. Fifth Circuit precedent holds that the "extraordinary power conferred by the All Writs Act . . . is firmly circumscribed, its scope depending on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power." *ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1358-59 (5th Cir. 1978).

26. A court may not rely on the Act to enjoin conduct that is "not shown to be detrimental to the court's jurisdiction," but rather any order under the Act must be "directed at conduct which, left unchecked, would have had the practical effect of

9

diminishing the court's power to bring the litigation to its natural conclusion." *ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1359 (5th Cir. 1978).

27. It is therefore improper to invoke the All Writs Act "if a court is able to effect a full and complete resolution of the issues before it without resorting to the extraordinary measures contemplated under the [All Writs] Act." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). "[T]he fact that a party may be better able to effectuate its rights or duties if a writ is issued never has been, and under the language of the statute cannot be, a sufficient basis for issuance of the writ." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1360 (5th Cir. 1978) (quoting *United States v. New York Telephone Co*., 434 U.S. 159, 98 S.Ct. 364, 381, 54 L.Ed.2d 376 (1977) (Stevens, J., dissenting) (citations omitted). There is no evidence in the record supporting a need for this Court to resort to this extraordinary measure.

28. Specialty is not in a position to prevent or frustrate a court order granting Plaintiff's relief because Specialty has no control over the Facility's operations, including whether Denka chooses to cease operations or complies with a court order requiring it to cease operations.

29. Additionally, within the context of the parties' rights under the Ground Lease and the practical effect of those rights, which became evident during the AOC construction projects, there is no basis to conclude that Specialty can or would interfere with Denka's operations and future activities. Plaintiff's Final Statement of Relief does not make Specialty indispensable to reaching a disposition of the case. *See ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1358-59

(5th Cir. 1978) (the All Writs Act cannot be employed to enjoin conduct that is "not shown to be detrimental to the court's jurisdiction").

30. Fifth Circuit precedent also disfavors employing the All Writs Act where the harm is merely speculative. *See Williams v. McKeithen*, 939 F.2d 1100, 1105 & 1105 n.13 (5th Cir. 1991) (reversing injunction preventing sheriffs from receiving prisoners due to potential for overcrowding); *ITT v. Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359–60 (5th Cir. 1978) (vacating order requiring garnishees to pay into a court fund to secure payment for potential judgment); *Brittingham v. U.S. C.I.R.*, 451 F.2d 315, 317–18 (5th Cir. 1971) (affirming denial of order that would have "preemptively" and "premature[ly]" interfered with the tax-collection process by preventing the Commissioner from introducing documents before a tax court allegedly obtained in violation of the attorney-client privilege).

31. The relief sought by Plaintiff would be injunctive in effect; Plaintiff seeks to enjoin Specialty from "potentially delay[ing] relief." ***(Rec. Doc. 58, p. 12-13).***

32. However, Specialty is not in a position to delay relief because it has no control over a Facility shutdown being ordered or such order being violated. Only Denka can choose to not shut down or to operate in violation of the shutdown order.

33. "The All Writs Act generally creates no authority to enjoin those who 'could not properly be held liable to any sort of injunctive relief based on their own conduct.'" *Williams v. McKeithen*, 939 F.2d 1100, 1104 (5th Cir. 1991) (quoting *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 402 (1982)).

34. Because Plaintiff has failed to show grounds upon which it might obtain relief against Specialty. Plaintiff cannot invoke the All Writs Act against Specialty in this matter.

Dated: February 2, 2024                Respectfully submitted,

*/s/ Eric E. Jarrell*
ERIC E. JARRELL (#16982)
ROBERT J. BURVANT (#14119)
KRYSTIN FRAZIER-SANTIAGO (#33838)
MARIE O. LUIS (#38332)
**KING & JURGENS, LLC**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Telefax: (504) 582-1233
ejarrell@kingjurgens.com
rburvant@kingjurgens.com
kfraziersantiago@kingjurgens.com
mluis@kingjurgens.com

*Counsel for DuPont Specialty Products USA, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of February 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                */s/ Eric E. Jarrell*
                                ERIC E. JARRELL #16982