IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>DENKA PERFORMANCE ELASTOMER, LLC, and DUPONT SPECIALTY PRODUCTS USA, LLC,<br><br>    *Defendants*. | Civ. No. 2:23-cv-735<br><br>Judge Barbier (Section: "J" (5))<br><br>Magistrate Judge North |

**JOINT STATUS REPORT FILED PURSUANT TO MAY 31, 2024 ORDER**

On May 31, 2024, the Court ordered the Parties to submit a status report in advance of the July 17, 2024, in-person status conference. *See* Order (ECF No. 176). The Court required that the status report discuss three topics: "the status of this litigation and of the litigation proceeding before the D.C. Circuit and what impact, if any, that action has on the instant matter." *Id.* Although the Parties have conferred in good faith on the content of this status report, there are substantial points on which the Parties differ, and the Parties have set forth their respective positions below.

    **I.**    **Status of the current district court litigation.**

**A.**    **The United States' position:** The United States requests that the Court reset this matter for trial, and includes a proposed pretrial schedule for the Court's review and approval. *See* Ex. A. The United States' proposed pretrial schedule includes new dates for limited additional summary judgment briefing, amended pretrial disclosures, as well as proposed windows of time

IM-#10398591.1

for the pre-trial conference and trial, subject to the Court's availability.[1]  *See* Feb. 16, 2024 Order ¶ 2 (ECF No. 169).

On February 15, the Court granted the United States' request that the trial be reset for the earliest possible two-week period on the Court's schedule that afforded the Parties with sufficient time before trial to consider the requirements of the now-finalized "New Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and National Emission Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins Industry" ("Final Rule").  *See* Feb. 16, 2024 Order (ECF No. 169); United States' Mot. to Continue Trial at 1 (ECF No. 162).  The Final Rule was published in the Federal Register on May 16, 2024, and DPE has since filed a petition for judicial review of the Final Rule in the United States Court of Appeals for the D.C. Circuit.  *See* 89 Fed. Reg. 42,932 (May 16, 2024); *Denka Performance Elastomer LLC v. United States Environmental Prot. Agency et al.*, No. 24-1135 (D.C. Cir.) (Doc. No. 2054934) ("D.C. Circuit Litigation").  So that a trial in this case could be promptly reset, the United States has continued to work with DPE on pretrial preparations while the trial schedule has been paused, such as conferring to narrow the Parties' respective objections on trial exhibits and deposition testimony designations.

The Parties have now had sufficient time to consider the Final Rule, and the United States requests that the Court approve the attached proposed pretrial schedule and set this matter for trial.  *See* Ex. A.[2]

---

[1] The United States objects to Denka Performance Elastomer, LLC's ("DPE's") request for a now third round of discovery.  Our proposed schedule therefore does not provide time for it, and DPE is not in a position to accurately estimate the amount of time it will take the United States to respond to an undefined additional set of discovery requests from DPE.

[2] If the Court denies the United States' motion to dismiss DPE's amended counterclaim (ECF No. 111), and the amended counterclaim is not dismissed on other grounds, the resulting

2

B. **DPE's position:**

1. ***DPE's Proposes to hold this case in abeyance until October 15 to determine whether the case has been rendered moot***: On the issue of scheduling, DPE believes the only prudent course is to hold this case in abeyance until October 15, 2024, at which time the Court should set a status conference to determine whether this action has been rendered moot or whether further litigation is necessary.

The Final Rule requires DPE to comply with the Rule's requirements within 90 days after the effective date of the Final Rule, or by October 15, 2024. It is undisputed that the 90-day deadline is impossible for DPE to meet and will require the Facility to shut down on or before October 15, 2024. As described further in Part II below, DPE is presently challenging the Final Rule before the D.C. Circuit. However, on June 26, 2024, the D.C. Circuit denied DPE's motion to stay the 90-day implementation period pending review of the Final Rule. On July 5, 2024, in light of subsequent rulings from the U.S. Supreme Court, DPE filed a petition for rehearing and for rehearing en banc, which remains pending before the D.C. Circuit.

In addition, DPE is preparing to seek emergency relief in the Fifth Circuit to uphold the validity of an extension request that was granted to DPE on June 27, 2024, by the Louisiana Department of Environmental Quality ("LDEQ") under LDEQ's lawful delegated authority and to preclude EPA from taking action contrary to the LDEQ extension. The LDEQ extension extended DPE's compliance deadline from October 15, 2024, to July 15, 2026. However, EPA has taken the position that the LDEQ extension is "ineffectual." Depending on the outcome of DPE's

---

Administrative Procedures Act review could delay the United States' proposed trial date. Such review could not be combined with the trial, and it would have to be resolved on cross-motions for summary judgment based solely on the pertinent EPA administrative record. *See* United States' Reply in Supp. of Mot. to Dismiss DPE's Am. Countercl. for Lack of Subject Matter Jurisdiction at 8-9 (ECF No. 130-1).

3

requests for emergency relief before the D.C. Circuit and Fifth Circuit, DPE will be forced to shut down the Facility on or before October 15, 2024. Such a shutdown would obviously render this action moot.

The trial schedule proposed by the United States—proposing a trial for late October—is obviously intended by the government to provide EPA time to determine whether the Facility will be shut down by October 15 and, as a consequence, whether a trial in this action will still be necessary. However, to prepare for a trial in late October, the parties will be required to expend substantial resources over multiple weeks (between August and mid-October). Similarly, the Court will need to expend substantial time and resources considering DPE's motion for summary judgment including the new briefs to be filed, addressing the United States' motion to dismiss DPE's Amended Counterclaim and the United States' motions in limine, and deciding issues regarding trial exhibits and deposition testimony. Rather than expending these resources on an action that could be rendered moot on or before October 15, DPE submits that the more prudent course is to wait to see whether or not the Facility has been shut down on or before October 15 due to the Rule's impossible-to-meet 90-day implementation period. If DPE obtains emergency relief from the D.C. Circuit or Fifth Circuit, and the United States continues to believe that a trial in this action is necessary, then the Court could set the trial for mid- to late-December 2024, or early 2025.

EPA is hardly in a position to object to a further short abeyance period. After all, in mid-February, the United States caused the cancelation of the March 2024 trial date and thereby delayed this action by seven months (assuming the United States were to receive its wish for a late-October trial). In light of that lengthy delay by the United States, it is reasonable and appropriate to continue to hold this case in abeyance until October 15, for the reasons set forth above. In fairness,

DPE is willing to stipulate that it will not argue as part of its motion for summary judgment that the period of the proposed abeyance—presumably this month to whenever the trial is potentially held—contributes to the United States' existing intentional delay of over seven years, which utterly refutes any notion of an "emergency."

Finally, a short abeyance would not cause any harm. EPA estimates that, for a hypothetical person who remains continuously just outside the Facility's fenceline all day, every day for 70 years breathing the Facility's chloroprene emissions, that person's lifetime risk of cancer would be increased by 6-in-10,000 or 0.06 percent due to exposure to chloroprene. Holding this case in abeyance for four months until October 15—which comprises less than 0.005 percent of the hypothetical 70-year lifetime and is notably shorter than the delay caused by EPA's request to cancel the March 2024 trial—would cause an infinitesimally small increase in risk to that hypothetical person (even using an EPA's estimate, which DPE strenuously disputes and will show significantly overestimates risk).

In the alternative, if the Court does not hold this action in abeyance until October 15, then DPE proposes the attached litigation schedule that calls for a trial in late-November, December, or early January, depending on the Court's availability. *See* Ex. B. Among other things, DPE's proposed schedule allows for reasonable and appropriate time to prepare and present renewed briefing on DPE's motion for summary judgment, including oral argument. DPE also anticipates supplementing certain expert declarations to address relevant aspects of the Final Rule. In addition, DPE's proposed schedule would allow minimal time for DPE to take reasonable targeted discovery. EPA, during its several months of delay, has refused to accomplish any of the requested discovery. To be clear, DPE's requests for reasonable targeted discovery would have no impact

on whatever trial date the Court may choose to set. DPE remains prepared to accomplish the remaining targeted discovery in a matter of a few weeks.

2. ***Status of summary judgment motion***: DPE believes this action should be dismissed based on DPE's pending motion for summary judgment, the arguments in which have become more compelling since EPA issued the Final Rule. Subject to DPE's abeyance proposal discussed above, DPE agrees with the United States' proposal that the United States file a sur-reply and DPE file an opposition brief discussing the impacts of the Rule on DPE's motion for summary judgment. DPE proposes that such briefs address subject matter post-dating the existing summary judgment briefing and be limited to 15 pages, instead of 8 pages as proposed by the United States, and that the timing of such briefs be determined if and when this case resumes after the proposed abeyance, at which time the parties and the Court will know whether or not this action has been rendered moot due to the October 15 compliance deadline of the Final Rule.

DPE's motion for summary judgment argued, among other things, that the Proposed Rule's inclusion of a two-year compliance period *necessarily*—*i.e.*, under the plain language of 42 U.S.C. § 7412(f)(4)—meant that EPA found the Facility's emissions are not causing an "imminent endangerment." R. Doc. 131-2 at 5-8; R. Doc. 157 at 1-3. Because EPA conceded there was no "imminent endangerment" in the Proposed Rule, there necessarily could be no "imminent and substantial endangerment" for purposes of this lawsuit. EPA had no meaningful response to that argument, except to say that the Proposed Rule was not final. Then, solely to avoid summary judgment, in the Final Rule, EPA abruptly and without providing any notice or meaningful explanation, changed DPE's compliance period from two years to only 90 days, which EPA acknowledges is impossible for DPE to meet.

6

IM-#10398591.1

As purported support for EPA's conduct, the Final Rule contains only a one-sentence explanation for cutting DPE's compliance period from two years to 90 days:

> In a change from the proposed rule, the EPA is shortening the compliance deadline for affected sources producing neoprene, due to the EPA's finding that chloroprene emissions from the only such source pose an imminent and substantial endangerment under CAA section 303, 42 U.S.C. § 7603. *United States v. Denka Performance Elastomer, LLC, et al.*, No. 2:23-cv-00735 (E.D. La. filed Feb. 28, 2023).

Obviously, EPA's claim of an "imminent and substantial endangerment" in this litigation is merely an unproven *allegation*, not an agency "finding" as the Final Rule attempts to assert. 42 U.S.C. §§ 7607(d)(4)(B)(i) & (d)(7). The administrative record contains no documentation of—let alone analysis or evidence supporting—EPA's purported "finding" of "imminent and substantial endangerment." There is no factual *evidence* whatsoever in the administrative record to support EPA's "singling out" of DPE.

As set forth fully in DPE's motion for summary judgment and reply in support, the structure and text of the Clean Air Act, together with 30 years of EPA interpretation of the statute, compel a finding that an alleged lifetime cancer risk greater than 1-in-10,000 does not, as a matter of law, constitute an imminent and substantial endangerment. R. Doc. 131-2 at 8-18; R. Doc. 157 at 1-5. That dispositive argument has been further underscored by the Final Rule, which inexplicably provides a compliance period of at least two years to all facilities other than DPE, including two facilities for which EPA estimates risk levels that are more than three times greater than EPA's estimate for DPE's Facility. Given that EPA granted a two-year waiver to these higher-risk facilities, EPA—as a statutory requirement for granting such a waiver—necessarily must have made a finding that these other facilities are *not* causing an "imminent endangerment." EPA offers no justification whatsoever for why it has singled out DPE for disparate treatment and, accordingly, this remains an area of reasonable discovery that DPE has been seeking.

The Court's resolution of DPE's motion for summary judgment will also be impacted by the United States Supreme Court's recent decision in *Loper Bright*, under which the question of whether emissions from DPE's Facility constitute an "imminent and substantial endangerment" is a question that requires this Court to exercise its independent judgment to answer. *Loper Bright Enterprises v. Raimondo*, 603 U.S. ----, ---- S.Ct. ----, 2024 WL 3208360 (June 28, 2024) ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."). DPE is confident that, under the CAA, the miniscule increase in lifetime cancer risk alleged by EPA in this action does not (and cannot) present an "imminent and substantial endangerment."

Finally, the notion that this lawsuit alleges an actual "emergency" that is worthy of action under Section 303 is fundamentally incompatible with the undisputed history of EPA's seven-years of conduct on this point, R. Doc. 131-2 at 19-22; R. Doc. 157 at 5-9, as well as EPA's insistence last February that the alleged "emergency" trial be continued for what has turned out to be at least several months.

**C.      DuPont Specialty Products USA, LLC's Position.**

DuPont Specialty Products USA, LLC ("Specialty") further requests that the submission/hearing be reset on its pending Fed. Rule Civ. Pro. Rule 12(c) Motion for Judgment on the Pleadings (ECF No. 132). This Rule 12(c) Motion was properly filed in response to Plaintiff's October 20, 2023, Statement of Final Relief Requested (ECF No. 132-2). Specialty's Rule 12(c) Motion avers that, in light of the final relief requested, Specialty should be dismissed from this matter prior to trial. This Motion was previously fully briefed, with a submission date of January 24, 2024 (ECF No. 132-5). The Court set an oral argument date for pending motions of February 22, 2024 (ECF No. 161). However, the Court cancelled this oral argument date upon

granting Plaintiff's Motion to Continue the March 11, 2024, trial date (ECF No. 169). As this case is now being proposed to be reset on the Court's trial docket, Specialty respectfully requests that its Rule 12(c) Motion be again submitted for decision, or set for oral argument, at the Court's discretion.

## II. Status of the D.C. Circuit Litigation regarding the "Final Rule".

### A. The United States' position:

On May 16, 2024, DPE petitioned for review of the Final Rule in the D.C. Circuit. *DPE v. EPA*, Docket No. 24-1135, Doc. #2063169 (D.C. Cir. filed May 16, 2024). On May 28, 2024, DPE filed an emergency motion for stay pending review. *See id.*, Doc. #2056561 (D.C. Cir. filed May 28, 2024). On June 26, 2024, a motions panel of the D.C. Circuit denied DPE's stay motion. *See id.*, Doc. #2061788 (D.C. Cir. filed June 26, 2024). On July 5, 2024, DPE filed a petition for panel rehearing and rehearing *en banc* of the order denying the stay motion. *See id.*, Doc. #2063169 (D.C. Cir. filed June 26, 2024).

On July 1, 2024, the State of Louisiana and Louisiana Department of Environmental Quality petitioned for review of the Final Rule in the D.C. Circuit. The court consolidated the case with DPE's petition.

As of the time of this status report, the D.C. Circuit has not acted on DPE's petition for rehearing, or requested a response thereto, or issued a briefing schedule in the consolidated cases.

### B. DPE's position:

As noted above, the Final Rule promulgates emissions standards applicable to the DPE Facility, including standards to reduce chloroprene emissions from the Facility. The Final Rule also promulgates emissions standards applicable to hundreds of other chemical facilities that address emissions of other hazardous air pollutants, including several facilities that EPA estimates

9

pose a higher risk than the DPE Facility. The Final Rule sets a deadline of two years for all regulated facilities—except for the DPE Facility—to comply with the Rule's requirements. In contrast to all other facilities regulated by the Final Rule, the Final Rule requires the DPE Facility to comply with the Rule's requirements in only 90 days. In the Proposed Rule, which contained substantially similar requirements as the Final Rule, EPA had explicitly acknowledged that "[t]he proposed provisions will require additional time to plan, purchase, and install equipment for … chloroprene control" and therefore "propos[ed] a compliance date of 2 years after the publication date of the final rule."

On May 16, 2024, DPE filed a petition for review in the D.C. Circuit seeking review of the Final Rule. *DPE v. EPA*, Docket No. 24-1135, Doc. #2063169 (D.C. Cir. filed May 16, 2024). On May 28, 2024, DPE filed an emergency motion for stay pending review seeking to stay the effectiveness of the 90-day compliance deadline applicable to DPE's Facility. *DPE v. EPA*, Docket No. 24-1135, Doc. #2056561 (D.C. Cir. filed May 28, 2024). In the stay motion, DPE argued that EPA has "singled out" DPE to require it to meet the undisputedly impossible task of complying with the Final Rule's requirements in only 90 days, when every other facility subject to the Final Rule, including those posing greater risks, have been given two years. DPE argued that the change from a two-year implementation period in the Proposed Rule to a 90-day implementation in the Final Rule was an unlawful "surprise switcheroo," *Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005), and that EPA had failed to provide a reasonable explanation in the administrative record for its disparate treatment of DPE.

On June 26, 2024, the D.C. Circuit issued a one paragraph order denying DPE's stay motion, stating simply that DPE had failed to satisfy the stringent requirements for a stay. *DPE v. EPA*, Docket No. 24-1135, Doc. #2061788 (D.C. Cir. filed June 26, 2024). On July 5, 2024, in

10

light of the United States Supreme Court's June 27 decision in *Ohio v. EPA*, 603 U.S. ----, ---- S.Ct. ----, 2024 WL 3187768 (June 27, 2024), DPE filed a petition for rehearing and rehearing en banc of the order denying the stay motion. *DPE v. EPA*, Docket No. 24-1135, Doc. #2063169 (D.C. Cir. filed June 26, 2024). In *Ohio*, the Supreme Court granted a stay pending review of another rule issued by EPA under the Clean Air Act, after the D.C. Circuit had denied a motion for a stay pending review of the same rule in that case. In *Ohio*, the Court made it clear that, in a case where there are strong arguments about the harms and equities on both sides, the determination of whether to grant a stay pending review "turns on the merits and the question who is likely to prevail at the end of this litigation." 2024 WL 3187768, at *7. The Supreme Court also emphasized that, in determining whether a petitioner is likely to prevail on the merits, a court must focus on whether an agency has provided a "satisfactory explanation" for its action that is "reasonable and reasonably explained" and shown that there is a "rational connection between the facts found and the choice made.'" *Id.* at *7-8 (quoting cases). DPE believes these principles are highly relevant to DPE's stay motion and, DPE submits, warrant rehearing of the D.C. Circuit's denial of that motion.

### III. Impact of the D.C. Circuit Litigation on the instant matter.

### A. United States' Position.

1. The D.C. Circuit Litigation underscores the continued need for a trial of this matter.

DPE's long-planned D.C. Circuit Litigation, as well as DPE's other recent administrative maneuvers and pending motions in the D.C and Fifth Circuit Courts of Appeal, confirm that promptly proceeding to trial to secure the United States' requested relief remains necessary and appropriate. Issuance of the Final Rule promulgated under a separate statutory provision of the Clean Air Act does not obviate the need for this case to continue. Nor does the ongoing D.C.

Circuit Litigation, which DPE filed with the goal of invalidating the Final Rule's chloroprene requirements so that DPE will *never* have to comply with them. *See* Ex. C at 2, excerpt of DPE's Petition for Review in the D.C. Circuit Litigation (asking the D.C. Circuit to declare unlawful and vacate the Final Rule's requirements regarding chloroprene emissions).

Although the Final Rule requires DPE to meet emission standards by October 15, 2024 – which require DPE to install pollution control equipment – DPE has signaled that it is unlikely to comply with that deadline despite that the D.C. Circuit recently denied DPE's stay motion. DPE believes it may have obtained a lengthy extension of that deadline – from October 15, 2024 (*see* 89 Fed. Reg. at 42,955) to July 15, 2026 – from the Louisiana Department of Environmental Quality so that DPE can continue to emit its current levels of chloroprene while it pursues the D.C. Circuit Litigation. *See* Ex. D at 2, June 28, 2024 Letter from DPE to EPA Administrator Michael S. Regan ("DPE intends to continue operating the Facility beyond October 15, 2024, and until two years after the effective date of the Final Rule"). DPE is also preparing to seek emergency relief in the Fifth Circuit over the Final Rule's compliance deadline. *See supra* § I.B(1).

Meanwhile, DPE's carcinogenic chloroprene emissions continue to cause an imminent and substantial endangerment to the public health and welfare of thousands of people – particularly infants and young children – who live near DPE's Neoprene manufacturing facility. That endangerment must end, and 42 U.S.C. § 7603 provides the Court with ample and independent authority to do so. *See, e.g.*, EPA, *Guidance on Section 303 of the Clean Air Act* at 1 (April 1999) (ECF No. 150-5) (noting that 42 U.S.C. § 7603 "is a 'gap-filling' authority, providing a basis for

injunctive relief… regardless of a pollution source's compliance or noncompliance with the [Clean Air] Act").[3]

DPE's actions following the Final Rule's publication make clear that injunctive relief ordered by this Court remains necessary to sufficiently reduce DPE's chloroprene emissions and their consequent cancer risks in the near term. This matter should promptly proceed to trial to resolve the ongoing endangerment to public health.[4]

2. <u>The D.C. Circuit Litigation further justifies dismissing DPE's amended counterclaim</u>.

The United States' fully briefed motion to dismiss explains why DPE's amended counterclaim should be dismissed as a matter of law for lack of subject matter jurisdiction. *See* United States' Mot. to Dismiss DPE's Am. Countercl. for Lack of Subject Matter Jurisdiction ("United States' Motion to Dismiss") (ECF No. 111). As described in the United States' Motion to Dismiss, DPE's flawed Administrative Procedure Act claim seeks review of a non-existent Clean Air Act emission standard. The EPA has now promulgated a Clean Air Act emission standard applicable to DPE – the Final Rule – review of which is limited to DPE's pending D.C. Circuit Litigation. This Court should proceed to decide the United States' Motion to Dismiss to clarify the scope of this lawsuit.

B. <u>DPE's Position</u>.

1. ***<u>This case should be held in abeyance until October 15 to determine if the matter is moot</u>***. As discussed above, unless at least one of DPE's requests for emergency relief are granted

---

[3] The interests of judicial economy were well served by continuing the March trial. The Court is now able to decide issues raised by the Parties' pre-trial briefing and at trial in light of the Final Rule's provisions.

[4] The United States' requested relief is compatible with the Final Rule's requirements, but also provides an important additional level of assurance that the years-long public health endangerment caused by DPE's chloroprene emissions will be abated and remains so.

IM-#10398591.1

by the D.C. Circuit or Fifth Circuit, the DPE Facility will be shut down on or before October 15, 2024, because DPE cannot possibly comply with the requirements of the Final Rule in that timeframe. For the reasons set forth in Part I.B.1 above, the most prudent course of action is to hold this case in abeyance until October 15, 2024, to determine whether the case has been rendered moot due to the shuttering of the DPE Facility.

2. *<u>DPE's position on the Amended Counterclaim</u>*. DPE proposes that, with all other aspects of this action, further litigation on DPE's Amended Counterclaim should be held in abeyance until October 15, 2024.

DPE further submits that the D.C. Circuit litigation crystalizes why DPE needs the relief requested in its Amended Counterclaim: EPA no longer believes itself to be limited to the four corners of the Clean Air Act in promulgating and enforcing air quality standards. As alleged in DPE's Amended Counterclaim, even while it was engaged in the rulemaking process at issue in the D.C. Circuit, EPA also established a parallel *ultra vires* ambient air quality standard based on a bright-line application of the 0.2 µg/m$^3$ value derived from the chloroprene inhalation unit risk ("IUR"). Even if the legal challenges to the Final Rule in the D.C. Circuit succeed, they will have no impact on EPA's shadow *ultra vires* air quality standard. If DPE survives the rulemaking, EPA can be expected to continue to enforce the *ultra vires* 0.2 µg/m$^3$ standard against DPE by continuing to employ "all available tools" against DPE. *See* Dkt. No. 104, DPE Am. Counterclaim ¶¶ 7, 34-43. As alleged in DPE's Amended Counterclaim, EPA's misuse of the "tools" in its arsenal includes (i) pressuring LDEQ to enforce the 0.2 µg/m$^3$ standard via emissions permits, (ii) using its RCRA authority to reduce ambient air concentrations, and (iii) this imminent and substantial endangerment action seeking to enforce the 0.2 µg/m$^3$ standard and impose specific

emissions reductions projects. The APA provides a remedy for this type of *ultra vires* agency action. *Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 589 (5th Cir. 2023).

                      Respectfully submitted,

                      **FOR THE UNITED STATES OF AMERICA**

                      TODD KIM
                      Assistant Attorney General
                      Environment and Natural Resources Division
                      United States Department of Justice

                      <u>    s/ Steven D. Shermer    </u>

<u>Trial Attorney</u>:    STEVEN D. SHERMER
                      District of Columbia Bar No. 486394
                      SCOTT M. CERNICH
                      Senior Attorneys
                      DAVIS H. FORSYTHE
                      DANIEL S. SMITH
                      Senior Counsel
                      HANNAH L. FRAZIER
                      JONAH M. SELIGMAN (La. Bar No. 38890)
                      Trial Attorneys
                      Environmental Enforcement Section
                      Environment and Natural Resources Division
                      United States Department of Justice
                      P.O. Box 7611
                      Washington, DC 20044-7611
                      (202) 514-1134
                      Steven.Shermer@usdoj.gov

                      HEATHER E. GANGE
                      District of Columbia Bar No. 452615
                      Senior Attorney
                      Environmental Defense Section
                      Environment and Natural Resources Division
                      United States Department of Justice
                      P.O. Box 7611
                      Washington, DC 20044-7611
                      (202) 514-4206
                      Heather.Gange@usdoj.gov

OF COUNSEL:

JUSTIN LANNEN
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500 (ORCEA)
Dallas, TX 75270

IM-#10398591.1

| | |
|---|---|
| JONES WALKER LLP | /s/ David A. Super |
| | David A. Super (*pro hac vice*) |
| James C. Percy (La. Bar No. 10413) | Jason B. Hutt (*pro hac vice*) |
| 445 N. Boulevard, Suite 800 | Jeffrey R. Holmstead (*pro hac vice*) |
| Baton Rouge, LA 70802 | Kevin D. Collins (*pro hac vice*) |
| Telephone: (225) 248-2130 | Britt Cass Steckman (*pro hac vice*) |
| Facsimile: (225) 248-3130 | Kevin M. Voelkel (*pro hac vice*) |
| jpercy@joneswalker.com | BRACEWELL LLP |
| | 2001 M Street NW, Ste. 900 |
| Robert E. Holden (La. Bar No. 06935) | Washington, DC 20006 |
| Brett S. Venn (La. Bar No. 32954) | Telephone:  (202) 828-5800 |
| 201 St. Charles Ave., Suite 5100 | david.super@bracewell.com |
| New Orleans, LA 70170 | jason.hutt@bracewell.com |
| Telephone: (504) 582-8000 | jeff.holmstead@bracewell.com |
| Facsimile: (504) 582-8583 | kevin.collins@bracewell.com |
| bholden@joneswalker.com | britt.steckman@bracewell.com |
| bvenn@joneswalker.com | kevin.voelkel@bracewell.com |

***Counsel for Denka Performance Elastomer LLC***

17

IM-#10398591.1

Respectfully submitted,

*/s/ Eric E. Jarrell*
ERIC E. JARRELL (#16982) TA
ROBERT J. BURVANT (#14119)
MARIE O. LUIS (#38332)
**KING & JURGENS, LLC**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Telefax: (504) 582-1233
ejarrell@kingjurgens.com
rburvant@kingjurgens.com
mluis@kingjurgens.com

***Counsel for DuPont Specialty Products USA, LLC***

18

IM-#10398591.1

**CERTIFICATE OF SERVICE**

      I certify that on July 10, 2024, a true and correct copy of the foregoing Joint Status Report was filed with the U.S. District Court for the Eastern District of Louisiana using the Court's CM/ECF system. Notice of this Electronic Filing will be sent to all parties by operation of the Court's Electronic Filing System.

                                                  s/ Steven Shermer
                                                  Steven D. Shermer

IM-#10398591.1