<u>*United States v. Denka Performance Elastomer, LLC et al. (2:23-cv-735)*</u>

*Joint Status Report Filed Pursuant to May 31, 2024 Order*

# Exhibit D

# BRACEWELL

June 28, 2024

**BY E-MAIL & FEDEX**

The Honorable Michael S. Regan
Administrator
ENVIRONMENTAL PROTECTION AGENCY
1200 Pennsylvania Avenue, N.W.
MAIL CODE 1101A
Washington, DC 20460

Re:   Denka Performance Elastomer, LLC – Expedited Request for Position Regarding Validity of Extension of Time in June 27, 2024 Letter from Louisiana Department of Environmental Quality

Dear Administrator Regan:

Denka Performance Elastomer, LLC ("DPE") hereby requests a statement of position from the Environmental Protection Agency ("EPA") addressing the validity of the extension of time granted by the Louisiana Department of Environmental Quality ("LDEQ") on June 27, 2024, attached as Exhibit A ("LDEQ Extension").

On May 16, 2024, EPA published the final rule entitled *New Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and National Emissions Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins Industry* ("Final Rule").[1] The Final Rule imposes a series of stringent emission control requirements upon DPE's facility in LaPlace, Louisiana ("Facility"), which is the Nation's only Neoprene production plant. The Final Rule requires DPE to comply with a significant portion of these requirements within 90 days of the Final Rule's effective date, which – as EPA acknowledges – is an impossible task. *See* 40 C.F.R. 63.481(o) and 63.481(p)(2) (the "90-Day Requirements").

On April 19, 2024, DPE submitted a facility-specific extension request to LDEQ, seeking an extension of the 90-Day Requirements pursuant to 42 U.S.C. § 7412(f)(4)(B) and 40 C.F.R. § 63.6(i)(4)(ii) ("Extension Request") (attached as Exhibit B). DPE submitted the Extension Request to LDEQ based on LDEQ's authority to grant an extension pursuant to its Part 70 operating permits program and its delegated authority under 40 C.F.R. Part 63.[2] The Extension Request explained that good cause exists for the extension because a period of at least two years is necessary for DPE to comply with the 90-Day Requirements and the Facility does not present an "imminent endangerment."

---

[1] 89 Fed. Reg. 42,932 (May 16, 2024).
[2] 60 Fed. Reg. 47,296 (Sept. 12, 1995) (EPA approval of the Louisiana Operating Permits program); 80 Fed. Reg. 9,613 (Feb. 24, 2015) (EPA approval of updated NESHAP delegation).

**Jeffrey R. Holmstead**
Partner

T:+1.202.828.5852     F: +1.800.404.3970
2001 M Street NW, Suite 900, Washington, DC 20036-3310
jeff.holmstead@bracewell.com     bracewell.com

AUSTIN   CONNECTICUT   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   SAN ANTONIO   SEATTLE   WASHINGTON, DC

# BRACEWELL

The Honorable Michael S. Regan (EPA)
June 28, 2024
Page 2

On June 27, 2024, LDEQ granted the Extension Request, stating, in part: "LDEQ finds that additional time is needed for Denka to install controls. . . . LDEQ also finds that steps will be taken during the period of the extension to assure that the health of persons will be protected from imminent endangerment." The LDEQ Extension provides DPE until two years after the Final Rule's effective date to comply with the 90-Day Requirements, subject to specified conditions.[3] Such conditions include monitoring of chloroprene in the ambient air near the Facility, the continuation of a suite of emission reduction strategies that DPE has implemented since May 2022, and semiannual progress reports. In reliance on LDEQ's authority to issue the extension, DPE intends to continue operating the Facility beyond October 15, 2024, and until two years after the effective date of the Final Rule, in good faith compliance with currently applicable requirements and the conditions of the LDEQ Extension.

On June 11, 2024, EPA indicated in a court filing that "[a]ny purported compliance extension granted by a state to Denka would be ineffectual."[4] EPA's court filing provided no explanation as to why any such state-issued extension would be "ineffectual." Nor has EPA provided any explanation since then.

Thus, DPE requests that EPA provide a formal position on the validity of the LDEQ Extension and the legal basis in support of such position. As EPA acknowledges, DPE cannot comply with the 90-Day Requirements by October 15, 2024. Without EPA's position on this matter, DPE will be subjected to substantial and mounting legal uncertainty on October 15, 2024, the compliance deadline in place before the LDEQ Extension was granted. If EPA intends to treat the LDEQ Extension as "ineffectual," and enforce the October 15, 2024 compliance deadline, then DPE intends to avail itself of legal recourse to resolve the consequent uncertainty before allowing "the Agency to drop the hammer" and impose virtually unlimited legal liability on DPE.[5]

Accordingly, DPE requests that EPA take action in response to this letter no later than the close of business on July 8, 2024. DPE will treat EPA's failure to act by July 8, 2024 as confirmation that EPA will treat the LDEQ Extension as "ineffectual" without providing further legal support. The short timeline associated with DPE's request is driven by two factors. First, DPE submitted its extension request to LDEQ on April 19, 2024—more than two months ago. EPA has already had ample time to consider the legal status of the extension. Second, time is of the essence for DPE and its 250 employees, including statutory and contractual obligations that must be addressed in advance of any facility closure.

In further support of this request, DPE is aware that the Final Rule purports to revoke LDEQ's long-standing authority to extend the compliance date of the 90-Day Requirements.[6] However, such action has no bearing on the LDEQ Extension.

---

[3] LDEQ has confirmed to DPE the compliance date based on the extension is July 15, 2026. Due to a clerical error, the LDEQ Extension incorrectly stated the compliance date as October 15, 2026.
[4] EPA, *Respondent's Opposition to Motion to Stay Final Rule* at 7-8, n2 (*Denka Performance Elastomer LLC v. EPA*, Docket No. 24-1135, Doc No. 2059123 (D.C. Cir. Filed June 11, 2024)).
[5] *Sackett v. EPA*, 566 U.S. 120, 127 (2012).
[6] Final Rule at 42,261 (40 C.F.R. § 63.507(c)(6)).

# BRACEWELL

The Honorable Michael S. Regan (EPA)
June 28, 2024
Page 3

First, the Final Rule amends 40 C.F.R. § 63.507(c) to provide that the "[a]pproval of an extension request under § 63.6(i)(4)(ii)" cannot be delegated to state agencies, but the Final Rule does not purport to prohibit the delegation of 40 C.F.R. § 63.6(i)(9), which specifically authorizes that "the Administrator *(or the State with an approved permit program)* may grant an extension of compliance with an emission standard as specified in [§ 63.6(i)(4)]." (Emphasis added). The authority to grant extension requests is clearly authorized by Section 63.6(i)(9) and EPA does not purport to revoke the delegation of such authority. Nor does the plain language of 40 C.F.R. § 63.507(c)(6) purport to prohibit DPE from submitting an extension request to LDEQ. Thus, even if EPA's revocation of authority were proper, it simply does not impact LDEQ's authority under Section 63.6(i)(9).

Second, EPA guidance confirms that granting an extension pursuant to 40 CFR § 63.6(i) "does not require delegation through Subpart E and, instead, is automatically granted to the States as part of their part 70 operating permits program approval. . . ."[7] EPA approved the Louisiana Operating Permits program on September 12, 1995.[8] Therefore, to issue the LDEQ Extension, LDEQ did not require the delegated Subpart E authority that EPA purports to revoke in the Final Rule. As such, EPA's purported revocation of authority in the Final Rule does not impact LDEQ's authority under Section 63.6(i)(9) or the validity of the LDEQ Extension.

Third, the Final Rule does not become effective until July 15, 2024. Thus, even assuming that the Final Rule's amendment to 40 C.F.R. § 63.507(c) applied to LDEQ's authority to grant extensions—and, as explained above, it plainly does not—the amended Section 63.507(c) is not yet effective and cannot legally foreclose any action until July 15, 2024. EPA's attempt to revoke Louisiana's authority to grant extensions *after the effective date* unequivocally recognizes that Louisiana does have such authority *before the effective date*, including on June 27, 2024, the date the LDEQ Extension was granted.

Finally, EPA's amendment of Section 63.507(c)(6) in the Final Rule does not adhere to the plain language of Section 63.507(c) or the unambiguous regulatory history of the provision. As the regulatory history makes clear, the authorities listed in Section 63.507(c) were intended to clarify which provisions of Part 63 could not be delegated to states *as a matter of law*.[9] In the preamble supporting the promulgation of Section 63.507, EPA explained:

> Each individual NESHAP, for example, contains requirements that are considered the "standards" and are, therefore, not delegable in terms of your making changes to them. Because the Administrative Procedures Act requires us to approve alternative emission limitations or control requirements through Federal rulemaking, we cannot delegate our rulemaking authority to you. More specifically, any requests by sources for approval of alternative standards must be considered by us and acted upon in a notice and comment rulemaking. Additionally, we cannot delegate authorities that

---

[7] Letter from John S. Seitz re *Delegation of 40 CFR Part 63 General Provisions Authorities to State and Local Air Pollution Control Agencies* (July 10, 1998) (Attached as Exhibit C).
[8] 60 Fed. Reg. 47,296 (Sept. 12, 1995) (Attached as Exhibit D).
[9] *See* 68 Fed. Reg. 37,334 (Aug. 22, 2003) (Attached as Exhibit E).

# BRACEWELL

The Honorable Michael S. Regan (EPA)
June 28, 2024
Page 4

may alter the stringency of the standard, that require Federal oversight for national consistency, or that may require Federal rulemaking.[10]

Section 63.507 is one of many "implementation and enforcement" provisions in Part 63. Indeed, when EPA promulgated Section 63.507, which is applicable to Subpart U, EPA also promulgated "implementation and enforcement" provisions for 34 other subparts.[11] EPA made clear that the "implementation and enforcement" sections were consistent across subparts and *only pertain to the authority to approve alternatives to emission standards*.

> The new "Implementation and enforcement" sections cite the rule sections or requirements for which you may not approve alternatives (i.e., non-delegable authorities). The authority to make changes to those sections or requirements is retained by us and includes the authority to approve any alternatives to emissions standards; including their applicability requirements. Conversely, any authority, not expressly reserved for us and included in these paragraphs, can be delegated to you.[12]

Contrary to EPA's addition of Section 63.507(c)(6) in the Final Rule, the authority of states to grant extensions pursuant to Section 63.6(i) can be—and has been—delegated as a matter of law.[13] Attempting to revoke a state's delegated authority through a "clarifying" provision (without any prior notice in the Proposed Rule) contradicts entirely the regulatory history of Section 63.507(c) and similar provisions.

Sincerely,

*[signature: Jeffrey Holmstead]*

Jeffrey R. Holmstead
**Counsel to Denka Performance Elastomer, LLC**

Enclosures (Exhibits A – E)

---

[10] *Id.* at 37,334.

[11] *Id.* at 37,337.

[12] *Id.* at 37,336.

[13] *See* LDEQ, Letter of Response to Hunt Forest Products, Inc. (Nov. 30, 2015) (granting one-year extension to comply with 40 C.F.R. 63 Subpart DDDDD); LDEQ, Letter of Response to Motiva Enterprises LLC (Dec. 28, 2016) (granting six-month extension to comply with 40 C.F.R. 64 Subpart CC); LDEQ, Letter of Response to Weyerhaeuser Co. (Feb. 6, 2008) (granting fourteen-month extension to comply with 40 C.F.R. 63 Subpart DDDD); LDEQ, Letter of Response to Georgia-Pacific Wood Products LLC (Oct. 16, 2007) (granting fourteen-month extension to comply with 40 C.F.R. 63 Subpart DDDD).

# BRACEWELL

The Honorable Michael S. Regan (EPA)
June 28, 2024
Page 5

cc (w/ encls.):
    David A. Super, Counsel to Denka Performance Elastomer, LLC
    Jason B. Hutt, Counsel to Denka Performance Elastomer, LLC
    Kevin M. Voelkel, Counsel to Denka Performance Elastomer, LLC
    Robert E. Holden, Counsel to Denka Performance Elastomer, LLC
    Matthew Littleton, Deputy Attorney General, DOJ
    Brandon N. Adkins, Environmental Defense Section, DOJ
    Steven D. Shermer, Environmental Enforcement Section, DOJ
    Amanda Vincent, Ph.D., PMP, Assistant Secretary, LDEQ