IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>DENKA PERFORMANCE ELASTOMER, LLC, and DUPONT SPECIALTY PRODUCTS USA, LLC,<br><br>    *Defendants*. | Civ. No. 2:23-cv-735<br><br>Judge Barbier (Section: "J" (5))<br><br>Magistrate Judge North |

### UNITED STATES' MEMORANDUM SUPPORTING ITS MOTION TO REOPEN THIS CASE AND SET A STATUS HEARING

### INTRODUCTION

Denka Performance Elastomer, LLC's ("Denka's") reasons for holding this case in abeyance until October 15, 2024 no longer exist, and this case is not moot. The company's LaPlace, Louisiana Neoprene manufacturing facility (the "Facility") will not shut down on October 15 because of the new pollution-control standards for Denka's chloroprene emissions in the Clean Air Act "Final Rule."[1]  *Cf.* Joint Status Report at 3 (ECF No. 177) ("DPE's Proposes [sic] to hold this case in abeyance until October 15 to determine whether the case has been rendered moot"). The Fifth Circuit recently ordered the Environmental Protection Agency ("EPA") not to act inconsistently with the Louisiana Department of Environmental Quality's grant of an extension of the Final Rule's October 15, 2024 compliance deadline pending a resolution of Denka's petition in that Circuit Court of Appeals.  *See* Order, Doc. No. 57-2,

---

[1] New Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and National Emission Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins Industry. 89 Fed. Reg. 42,932 (May 16, 2024).

*Denka Performance Elastomer LLC et al. v. United States Environmental Prot. Agency et al.*, No. 24-60351 (5th Cir.). The Facility will therefore continue to spew its current, unacceptably high levels of carcinogenic chloroprene emissions into the air that thousands of St. John the Baptist Parish residents must regularly breathe. At the same time, Denka continues to press its D.C. Circuit Court of Appeals litigation in an attempt to kill the Final Rule's chloroprene emission reduction requirements so that the company never has to comply with them. *See, e.g.*, Denka's Pet. for Review at 2, Doc. No. 2054934, *Denka Performance Elastomer LLC v. United States Environmental Prot. Agency et al.*, No. 24-1135 (D.C. Cir.).[2]

The United States therefore respectfully moves this Court to reopen this case and set a status hearing on the United States' renewed request to reset this matter for trial. *See* Joint Status Report § I.A (ECF No. 177) (request to reset trial). The ever-accumulating, unacceptably high lifetime cancer risks from Denka's ongoing chloroprene emissions continue to present an imminent and substantial endangerment to the public health and welfare of thousands of St. John the Baptist Parish residents. *See* 42 U.S.C. § 7603. This endangerment must be abated.

## ARGUMENT

**I.  This Case Is Vital To Protecting the Public Health and Welfare of Thousands of Parish Residents.**

Unless Denka is ordered to reduce its chloroprene emissions – and until it complies with the Final Rule – thousands of Parish residents will continue to be exposed to unacceptably high excess risks of acquiring lung, liver, and other potentially fatal cancers during their lifetimes. *See* United States' Mem. Supp. Prelim. Inj. at 5-6 (ECF No. 9-2). Many factors and ample

---

[2] The D.C. Circuit has not yet set a briefing schedule. Proposed formats for the merits briefing are due by September 19. *See* August 16, 2024 Order, Doc. No. 2070379, *Denka Performance Elastomer LLC v. United States Environmental Prot. Agency et al.*, No. 24-1135 (D.C. Cir.).

evidence support the need for immediate relief in this case. For example, urinalysis testing confirms that chloroprene has entered the bodies of some Parish residents. *See id*. And chloroprene concentrations – despite Denka's emission reductions – remain multiples higher than 0.2 μg/m$^3$ in the communities surrounding the Facility. Exposure to these concentrations is linked to excess cancer risks that are multiples higher than the EPA's and other United States regulatory agencies' presumptive 1-in-10,000 upper threshold for so-called "acceptable" lifetime excess cancer risk. Because the current airborne chloroprene concentrations remain higher than 0.2 μg/m$^3$, a 1-in-10,000 cancer risk will be reached (and then exceeded) years, if not decades, sooner than an assumed 70-year *lifetime* period.[3]

The speed at which chloroprene-related cancer risks accrue in infants and young children is particularly alarming. *See* United States' Mem. Supp. Prelim. Inj. at 25. Infants and young children are especially susceptible to chloroprene's cancer-causing potential because of its DNA-damaging, "mutagenic" effects. *See id*. at 5. And roughly 400 pre-kindergarten through fourth grade students recently started another school year at the Fifth Ward Elementary School, just hundreds of feet away from the Facility's western fenceline.[4]

---

[3] Congress clearly intended endangerment statutes like 42 U.S.C. § 7603 to protect against excessive cancer risk despite the inherent uncertainty of whether exposure will materialize into diagnosable cancer. *See, e.g.*, *United States v. Reilly Tar & Chem. Corp.*, 546 F. Supp. 1100, 1110 (D. Minn.1982) (citing examples of substantial endangerments in the Safe Drinking Water Act's legislative history). Even a latent threat of developing cancer suffices. *See id.* At least one court has noted, in dicta, that even a twenty-year latency period should not disqualify Denka's emissions as a near-term, imminent endangerment. *See, e.g., Maine People's All. and Nat. Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 279 n.1 (1st Cir. 2006) (even if there is "a reasonable prospect that a carcinogen released into the environment today may cause cancer twenty years hence, the threat is near-term even though the perceived harm will only occur in the distant future").

[4] *See* School Profile ("About Us"), Fifth Ward Elementary School (Sept. 3, 2024), https://fwe.stjohn.k12.la.us/ ("Located in Reserve, Louisiana, Fifth Ward Elementary School educates just over 400 students in pre-kindergarten through 4th grades").

Denka can do more to reduce these cancer risks and abate the ongoing public health endangerment its chloroprene emissions are causing. But Denka will not do more in advance of meeting the Final Rule's chloroprene emission standards – which Denka is actively seeking to overturn – unless ordered to. Indeed, even with a potentially years-long extension of time to comply with the Final Rule, Denka would not commit to complying with its requirements. *See* Ex. A at 52, Tr. of July 17, 2024 Status Hr'g. This litigation should therefore resume.

## II. The Facility's History of Higher Emissions and Cancer Risks Does Not Erase the Ongoing Endangerment.

This case was initiated after years of determined, but ultimately unsuccessful, efforts by the EPA to try to convince Denka to sufficiently reduce its chloroprene emissions. It is true that the Facility has been operating since the 1960s. But chloroprene's carcinogenic potency and the cancer risks facing Parish residents from Denka's emissions were not fully understood until roughly five decades later. *See Sun Oil Co.*, 148 F.3d 606, 610 (6th Cir. 1998) ("[a]n 'imminent hazard' may be declared at any point in a chain of events which may ultimately result in harm to the public"); *see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 837 (D.N.J. 2003), *aff'd*, 399 F.3d 248 (3d Cir. 2005) ("[i]mminence refers 'to the nature of the threat rather than identification of the time when the endangerment initially arose'"). The EPA's 2010 Integrated Risk Information System assessment of chloroprene (the "2010 IRIS Assessment") – the current toxicological assessment of chloroprene's carcinogenic potency – was not published until September 2010. *See* United States' Mem. Supp. Prelim. Inj. at 6. And air monitoring sufficient to evaluate long-term average chloroprene concentrations in the communities surrounding the Facility did not *start* until May 2016. *See* United States' Opp'n to Denka's Mot. for Summ. J. at 17 (ECF No. 150). The EPA has taken strong, focused efforts to reduce Denka's chloroprene emissions since that time, including by filing this case. *See id*. at 16-19.

4

Indeed, Denka's amended counterclaim is premised upon the EPA's consistent efforts.

**III.  This Case Should Swiftly Proceed To Trial.**

The United States respectfully seeks an immediate status conference to set an expeditious pretrial schedule and trial date.

A. <u>There is no need for a full briefing cycle on a new summary judgment motion</u>.

The United States requested a short sur reply to Denka's summary judgment to make one simple point: Denka's primary argument in its summary judgment motion is now moot.  The EPA did not finalize the proposed compliance date in the proposed rule, which Denka's primary summary judgment argument is based upon.  *See* Denka's Mem. Supp. Mot. for Summ. J. at 5-8 (ECF No. 131-2).  The EPA finalized 42 U.S.C. § 7412(f)(4)'s 90-day statutory default compliance deadline for chloroprene emissions.  *Compare id*. *with* 89 Fed. Reg. 42,932, 42,955 (May 16, 2024).  Denka's summary judgment argument about the implications of a proposed waiver from complying with the 90-day compliance period is thus moot and no longer relevant. *See Gahagan v. U.S. Citizenship & Immigr. Servs.*, No. 14-1268, 2014 U.S. Dist. LEXIS 112910, at *6 (E.D. La. Aug. 14, 2014) (denying plaintiff's summary judgment motion after finding that argument underlying motion was "moot"); *see also Gray v. First Nat'l Bank*, No. 89-794, 1990 U.S. Dist. LEXIS 14263, at *5 (E.D. La. Oct. 19, 1990) (same).

There is therefore no need to start from scratch with a new months-long summary judgment briefing cycle.  Since this case was filed, there have been no developments regarding Denka's position that the cancer risks from its chloroprene emissions are not imminent and substantial "as a matter of law" or that the current "inhalation unit risk estimate" for chloroprene in the EPA's 2010 IRIS Assessment was based on unsupported assumptions.  *See* Denka's Mem. Supp. Mot. Summ. J. at 8, 22.  Nor have there been developments in the complex, "hotly

5

disputed" scientific questions about whether Denka's carcinogenic chloroprene emissions are exposing Parish residents to an imminent and substantial endangerment. *See* United States' Opp'n to Denka's Mot. Summ. J. at 1 (ECF No. 150) (highlighting Denka's repeated representations to this Court that there is a "mass of material facts, nearly all of which are hotly disputed" (citing ECF No. 25-3 at 1, ECF No. 28-3 at 1, ECF No. 29 at 2, ¶ 7, and ECF No. 92 ¶¶ 2-4)). Denka's self-proclaimed hotly disputed mass of material facts stemming from these scientific questions continues to render summary judgment inappropriate. *See* Fed. R. Civ. P. 56(a).

Denka has telegraphed that its new summary judgment briefing will only serve to raise additional irrelevant issues, such as the Supreme Court's ruling in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). *See* Joint Status Report at 8 (ECF No. 177). But the United States has never raised the concept of *Chevron* deference in this case. Additional briefing from Denka about *Loper Bright* is therefore irrelevant and will not help the Court decide the relevant issues here.

For these reasons, the United States believes that a very short sur reply and commensurate response regarding Denka's current summary judgment motion, as described in Exhibit A to the July 10 Joint Status Report, will enable the Court to decide the relevant issues. *See* Joint Status Report, Ex. A (ECF No. 177-1).

 B.  There is no need for a third round of discovery, including third rounds of expert reports and third depositions of some of the same witnesses.

"At some point, discovery must end...Otherwise, the case management process is rendered meaningless." *Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, No. CV 18-2885, 2021 WL 6196978, at *2 (E.D. La. Dec. 30, 2021) (citing *Hughes v. Boston Sci. Corp.*, 2009 WL 3031680, at *2 (S.D. Miss. Sept. 17, 2009)).

Denka first sought its long-wished-for third round of discovery in late February.  *See* Proposed Order, Denka's Mot. for Partial Am. of Scheduling Order (ECF No. 171-1).  None of the information Denka sought then is likely to be relevant to the central questions in this case: the carcinogenic potency of and resulting cancer risks from Denka's chloroprene emissions. Denka's new discovery will presumably again focus on the same topics its February requests revolved around: the Clean Air Act Final Rule, the earlier non-final proposed rule, and the two additional depositions that Judge North already denied as "unnecessary."  *See id*. and Ex. A at 48, ln. 17-18; Tr. of July 17, 2024 Status Hr'g (Denka's counsel's explanation that its new discovery requests will go "directly to the rule"); *see also* Dec. 12, 2023 Order (denying Denka's motion to compel) (ECF No. 129).  These discovery requests are neither relevant nor proportional to Denka's need to establish defenses to the government's public health endangerment claim or to prove up its amended counterclaim *in this case*.  *See* Fed. R. Civ. P. 26(b)(1) (court must consider "the importance of the discovery in resolving the issues").

Furthermore, Denka's now-ubiquitous claim that its third round of discovery will be "targeted" or "limited" is meaningless.  *See* July 10 Joint Status Report at 5 (last paragraph); Ex. A at 48, ln. 13-19.  Denka has used these go-to labels for each round of its expansive discovery requests since this case began.  *See, e.g.*, Denka's Mot. for Partial Am. of Scheduling Order at 1 (ECF No. 171) (seeking "targeted discovery"); Denka's Mot. for Two Additional Depos. of *Limited* Scope and Duration (ECF No. 113) (denied by Judge North) (emphasis added); Joint Proposed Scheduling Order at 3 (Denka's reservation to submit additional "limited" written discovery requests); Denka's Mot. for Expedited Disc. (ECF No. 28) (requesting "targeted" written discovery).

In reality, Denka's discovery requests have spanned more than 110 document custodians

7

located in no fewer than six EPA offices in Dallas, Texas, Research Triangle Park, North Carolina, and Washington, D.C. *See* Ex. B, Decl. of Stephen D'Alessio ¶ 4. Denka received almost 30,000 documents, totaling over half-a-million pages, from the EPA on topics ranging from the detailed evidence supporting the government's endangerment claim, to the specific scientific choices the EPA made in developing the 2010 IRIS Assessment, to information about Clean Air Act regulations (including regulations about air pollutants besides chloroprene), to grants issued by the EPA to Louisiana state agencies, to EPA civil rights investigations. *See id*.; *see also* Ex. C, excerpts of Denka's Three Sets of Production Requests. Denka has taken depositions of the United States' experts and other witnesses; in some cases twice. Denka's "limited" discovery in this case also included issuing subpoenas seeking information from, among other individuals, the author of a law review article Denka perceived as critical. *See* Ex. D (.pdf pg. 11) (Exhibit A, § II(1) to subpoena to Maryum Jordan).

Because the underlying scientific facts in this case have not changed, there is no need for additional discovery or extended date ranges on already completed discovery requests. Allowing Denka more discovery will only lead to further, unnecessary delay.

## **CONCLUSION**

For these reasons, the United States respectfully requests that the Court grant the United States' motion, reopen the case, and set this matter for a status hearing at the Court's earliest convenience for the purpose of setting a pretrial schedule and trial date.

Dated: September 17, 2024

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Trial Attorney:

    s/ Steven D. Shermer
STEVEN D. SHERMER
Senior Attorney
District of Columbia Bar No. 486394
DAVIS H. FORSYTHE
DANIEL S. SMITH
Senior Counsel
HANNAH L. FRAZIER
JONAH M. SELIGMAN (LA Bar # 38890)
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-1134
Steven.Shermer@usdoj.gov

OF COUNSEL:

JUSTIN LANNEN
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500 (ORCEA)
Dallas, TX 75270