UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 23-735 |
| DENKA PERFORMANCE ELASTOMER, LLC and DUPONT SPECIALTY PRODUCTS USA, LLC | SECTION: "J"(5) |

**ORDER & REASONS**

Before the Court is a *Motion to Dismiss Denka Performance Elastomer, LLC's Amended Counterclaim No. 5 for Lack of Subject Matter Jurisdiction* **(Rec. Doc. 111)**, filed by the United States of America ("the United States" or "the EPA") and an opposition filed by Denka Performance Elastomer, LLC ("Denka") (Rec. Doc. 119) to which the United States has replied (Rec. Doc. 188). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

**FACTS AND PROCEDURAL BACKGROUND**

On August 30, 2023, this Court dismissed Denka's counterclaims and its first six affirmative defenses. (Rec. Doc. 90). The Court dismissed these claims with prejudice with the exception of Denka's (1) sixth affirmative defense which was stricken with leave to amend and (2) fifth counterclaim which was dismissed without prejudice. This counterclaim and defense rested on essentially the same ground: that "Counterclaim-Defendants have arbitrarily and capriciously reversed 30 years of EPA risk assessment policy without reasoned explanation by treating an estimated

1

1-in-10,000 risk based on the 2010 IUR in a strict, 'bright line' fashion." *Id.* at 15-16 (quoting Rec. Doc. 22, at 63). Denka was allowed to amend this counterclaim and defense "assuming that Denka can provide a basis which does not rest solely on the issuance of the 2010 Review, the Denials, or the institution of the United States' Section 303 action." *Id.* at 16. Denka has now amended its fifth counterclaim (Rec. Doc. 108) in an attempt to cure this deficiency. However, the United States has moved to dismiss Denka's amended counterclaim, arguing that the government has not waived sovereign immunity as to this claim; and therefore, the Court lacks subject matter jurisdiction over this claim for two reasons. (Rec. Doc. 111). First, Congress expressly provided in the Clean Air Act ("CAA") that the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has original and exclusive subject matter jurisdiction over challenges to the validity of the CAA Section 112 standards. (Rec. Doc. 111-1, at 7). Second, the CAA bars the judicial review of such standards in civil enforcement matters. *Id.*

In response, Denka argues its counterclaim is "intended to obtain remedy for EPA's *ultra vires* establishment of an ambient air quality standard (i) that was adopted without the notice and comment process required by the CAA and the Administrative Procedure Act ("APA") and (ii) is substantively beyond EPA's authority." (Rec. Doc. 119, at 1).

## **LEGAL STANDARDS**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the

evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v.*

3

*U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

Denka's amended counterclaim is now squarely focused on its assertion that the EPA is attempting to skirt formal rulemaking procedures under Section 112 of the CAA through this lawsuit. ("The crux of [Denka's] amended counterclaim is that EPA imposed the 0.2 μg/m3 standard despite not having completed the public notice and comment rulemaking process pursuant to Section 112."). (Rec. Doc. 119, at 4). Therefore, Denka argues the EPA's action is *ultra vires*.

Denka's amended counterclaim is dissimilar from the one this Court previously dismissed. (Rec. Doc. 22, at 62–63); *compare* (Rec. Doc. 108, at 28–29). Where before the counterclaim asserted that the EPA's reliance on the 1-in-10,000 risk standard established in the 2010 Review was "arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the APA" (Rec. Doc. 22, at 63), Denka's amended counterclaim now asserts that the

> EPA was obligated to conduct a formal rulemaking that provides a 'reasoned explanation' for its change in policy with respect to IUR values. EPA's failure to do so, resulting in the 0.2 μg/m$^3$ standard, ['Alleged Standard'] was arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the APA.

(Rec. Doc. 108, at 29).

4

The United States denies that this lawsuit "was filed to enforce the [0.2 µg/m$^3$ standard] and denies that the Alleged Standard is an emission standard of any kind, much less one promulgated under CAA Section 112." (Rec. Doc. 111, at 6). However, the United States also argues that this Court need not address this issue in order to dismiss Denka's amended counterclaim because its validity turns solely on the question of sovereign immunity.

Denka's position is that the United States has *ultra vires* established a bright line emission standard which they are now attempting to enforce through this action rather than through the proper Section 112 procedures. In response, the United States argues that even if Denka is correct and the EPA's actions constituted improper rulemaking, this Court would be barred from reviewing the topic. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). Any such waiver must be explicitly expressed by Congress via statute, and any perceived waiver of immunity must be strictly construed in favor of the sovereign. *Fort Bend County v. United States Army Corps of Engineers*, 59 F.4th 180, 189 (5th Cir. 2023). As to Section 112, the government has waived sovereign immunity via statute, but the D.C. Circuit was granted exclusive jurisdiction over any such claims. 42 U.S.C. § 7607(b)(1). Therefore, the United States argues that this Court would not have authority to hear Denka's amended counterclaim even if the EPA's actions could be considered improper rulemaking.

Denka does not dispute that any action for review of a Section 112 rule must be brought in the D.C. Circuit. However, Denka asserts that the Court does have jurisdiction because the D.C. Circuit only has exclusive jurisdiction over rules *promulgated* under Section 112. Denka asserts that the EPA is attempting to skirt Section 112's requirements by illegally enforcing a standard without the proper rulemaking process. (Rec. Doc. 119, at 9). Therefore, Denka argues, the EPA's actions in this case are not commended to the oversight of the D.C. Circuit under § 7607(b)(1), but instead fall under the general jurisdictional grant of the APA for judicial review when an agency exceeds its statutory authority. (Rec. Doc. 119, at 11). In other words, Denka asserts that because the EPA's action was *ultra vires*, their counterclaim may be heard in this Court. In *Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 589 (5th Cir. 2023), the Fifth Circuit stated that

> Section 702 of the APA generally waives the Federal Government's immunity from a suit seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority. When a plaintiff uses the APA to assert a "non-statutory cause of action"— such as an *ultra vires* claim—section 702 "contains two separate requirements for establishing a waiver of sovereign immunity. First, the plaintiff must identify some 'agency action' affecting him in a specific way. The action need not be final. Second, the plaintiff must show that he has been adversely affected or aggrieved by that action.

(cleaned up). Denka argues that because the EPA's establishment of the alleged standard was illegal, this Court is not bound by the narrow jurisdictional grant to the D.C. Circuit.

6

In response, the EPA argues that Denka's reading of § 7607(b)(1)–(2) would "nullify Congress's choice to assign the circuit courts to review CAA actions, whether EPA acted lawfully or not." (Rec. Doc. 188, at 5).

The Court finds that no Clean Air Act 'standard' of any kind is involved in this imminent and substantial endangerment suit. Congress provided the EPA with different means to address air pollution from individual stationary sources, like Denka, including promulgating emission standards that regulate stationary sources of hazardous air pollution under the CAA, Section 112, 42 U.S.C. § 7412; bringing enforcement actions based on CAA violations, *id.* § 7413; and bringing actions under Section 303 based on evidence of an imminent and substantial endangerment to public health, welfare, or the environment caused by one or more sources of air pollution, *id.* § 7603. In this case, the EPA brought a Section 303 imminent and substantial endangerment claim. The EPA may base a Section 303 claim solely on evidence that Denka is a source of pollution that is causing or contributing to an imminent and substantial endangerment. 42 U.S.C. § 7603 ("upon receipt of evidence that a pollution source . . . is presenting an imminent and substantial endangerment to public health or welfare, or the environment, may bring suit. . ."); *see also New-Indy Catawba*, 2022 WL 18357257, at *10 ("Section 303 of the CAA does not require the EPA to show [the defendant] violated any set standard . . . to obtain or extend an injunction."). The EPA filed this action seeking an injunction against Denka, alleging that its chloroprene emissions pose an imminent and substantial endangerment to the public health and welfare of the surrounding community and requiring Denka to

7

immediately reduce its chloroprene emissions to levels that no longer cause or contribute to unacceptably high cancer risks.

The Court finds that the EPA's claim is based on a "human health statistic indicating the amount of chloroprene that will create a 1-in-10,000 risk of contracting cancer if a person breathes it over a 70-year lifetime." (Rec. Doc. 188, at 7–8). The statistic is "based on the excess cancer risk posed by the actual concentrations of chloroprene being breathed [daily by St. John's Parish residents]—concentrations many times higher than the lowest concentrations that pose a greater than 1-in-10,000 risk of cancer if breathed for two years beginning in infancy, or over a 70-year lifetime."[1] (Rec. Doc. 188, at 7). These concentrations are 1.4 μg/m$^3$ and 0.2 μg/m$^3$, respectively.[2] *Id.*

The Court finds EPA's reliance on a human health statistic, as evidence to bring a Section 303 action, does not constitute *ultra vires* action. This is merely EPA's evidence of "imminent and substantial endangerment" to the public health of St. John's Parish resident. At trial, the Court will decide whether the human health statistic indicating the amount of chloroprene that will create a 1-in-10,000 risk of

---

[1] Separate and apart from this action, Denka, along with state, environmental, and other industry petitioners, petitioned the D.C. Circuit for review of the EPA's Final Rule, 89 Fed. Reg. 42,932, in the D.C. Circuit. *Denka Performance Elastomer LLC v. EPA, et al.*, Case No. 24-1135. The D.C. Circuit consolidated all petitions challenging the Final Rule. *Id.* The consolidated petitions "seek review of EPA's amendments to Clean Air Act emission standards that apply" to industries like Denka's. *Id.* at Rec. Doc. 2075838. The Final Rule would require a post-control chloroprene concentration of 08. μg/m$^3$; a fence-line chloroprene concentration of .3 μg/m$^3$; and a .2 μg/m$^3$ chloroprene concentration measured in the community. (Rec. Doc. 180, at 10) (Transcript of Status Conference on July 17, 2024).

[2] For our colleagues who lack a science background, μg/m$^3$ is microgram per cubic meter. This is a unit of measurement that indicates concentration of a substance in a given volume of air or other gas.

8

contracting cancer if a person breathes it over a 70-year lifetime is an imminent and substantial endangerment to the community surrounding Denka's neoprene plant.

Further, if Denka's Alleged Standard was a procedurally defective air standard, the Court finds it would be a CAA Section 112 emission standard, which would be subject to challenge in the D.C. Circuit pursuant to 42 U.S.C. § 7607(d)(8). Moreover, this is not a regulatory action nor a Section 113 enforcement action. If it was, Denka would be expressly barred by Congress to challenge CAA standards in civil enforcement cases when those standards could have been reviewed in the D.C. Circuit pursuant to 42. U.S.C. § 7607(b)(2). Denka's argument that this Court has jurisdiction to review the EPA's action based on allegations that EPA exceeded its authority under the CAA due to procedural defects directly contradicts Section 7607(d)(8) and would nullify Congress' choice to assign the D.C. Circuit to review CAA actions, whether the EPA acted lawfully or not. Thus, the APA does not waive the government's sovereign immunity even if the Denka's Alleged Standard was an ambient air quality standard because Congress expressly provided in 42 U.S.C. § 7606(b)(1) that the D.C. Circuit has original and exclusive subject matter jurisdiction over challenges to the validity of CAA Section 112 standards. The APA does not provide an alternative waiver of the Government's sovereign immunity that would enable this Court to review such standards. 5 U.S.C. §§ 702, 704.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the United States' *Motion to Dismiss Denka Performance Elastomer, LLC's Amended Counterclaim No. 5 for Lack*

*of Subject Matter Jurisdiction* **(Rec. Doc. 111)** is **GRANTED**. Denka's amended counterclaim no. 5 is **DISMISSED with prejudice**.

New Orleans, Louisiana, this 10th day of January, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE